COMMERCIAL CREDIT EQUIPMENT CORPORATION, *Respondent,*
v. RAY E. CARTER *et al., Appellants.*

*Gerry L. Alexander, Parr, Alexander, Cordes & Sutherland,* and *Wm. Thomas McPhee,* for appellants.

*Burkey, Marsico, Rovai & McGoffin* and *Michael J. Turner,* for respondent.

BRACHTENBACH, J.—The sole issue raised by this appeal is whether the airplane purchased by defendant from plaintiff's assignor and secured by a contemporaneously executed security agreement constitutes "consumer goods" within the meaning of RCW 62A.9-501,[1] so that defendant

---

[1] "(1) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. If the collateral is documents the secured party may proceed either as to the documents or as to the goods covered thereby. A secured party

(the defaulting debtor) is not liable for any deficiency after plaintiff (the secured party) has disposed of the airplane pursuant to RCW 62A.9-504.[2]

The defendant husband purchased an airplane from the plaintiff's assignor. The purchase price was $23,955, with the balance, after application of a downpayment, being secured by a contemporaneously executed purchase money security agreement. After defendant had been in default in the monthly payments for some months, the plaintiff took possession of the airplane and disposed of it in a reasonably commercial manner. The parties admit that the sale was effected in accordance with RCW 62A.9-504, the out-of-court realization methods accorded to a secured party. There remained a deficit of $2,382.51.

The trial court held that the defendant purchased the airplane with the intent that it be for his own personal use only, rather than for commercial purposes, and that originally it was so used.

However, the court concluded that the airplane was not within the definition of "consumer goods." Consequently, judgment was entered against the defendant for the deficiency, plus costs and attorney's fees. We reverse.

Whether the defendant is liable for the deficiency depends upon a determination of the classification of the airplane under the Uniform Commerical Code. RCW 62A.9-

---

in possession has the rights, remedies and duties provided in RCW 62A.9-207. The rights and remedies referred to in this subsection are cumulative.

"Notwithstanding any other provision of this Code, in the case of a purchase money security interest *in consumer goods* taken or retained by the seller of such collateral to secure all or part of its price, the debtor shall not be liable for any deficiency after the secured party has disposed of such collateral under RCW 62A.9-504 or has retained such collateral in satisfaction of the debt under subsection (2) of RCW 62A.9-505." (Italics ours.) RCW 62A.9-501.

[2]"(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing . . .

". . .

"(3) Disposition of the collateral may be by public or private proceedings . . ." RCW 62A.9-504.

109 segregates goods into four categories: (1) consumer goods, (2) equipment, (3) farm products and (4) inventory.[3] These classifications not only determine the issue in this case, but have other ramifications such as fixing the place of filing (RCW 62A.9-401), controlling certain questions of priority (RCW 62A.9-312) and other consequences as mentioned in the official comment to Uniform Commercial Code § 9-109. As pointed out in that comment, the classes are mutually exclusive so that the same property cannot at the same time and as to the same person fit into more than one category.

RCW 62A.9-109(1) states that goods are " 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes." If the collateral herein falls within this definition the defendant is not liable for any deficiency because the Washington version of the Uniform Commercial Code contains the following addition to the proposed official text of the code:

Notwithstanding any other provision of this Code, in the case of a purchase money security interest in consumer goods taken or retained by the seller of such collateral to secure all or part of its price, the debtor shall

[3]"Goods are

"(1) 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes;

"(2) 'equipment' if they are used or bought for use primarily in business (including farming or a profession) or by a debtor who is a non-profit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products or consumer goods;

"(3) 'farm products' if they are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states (such as ginned cotton, woolclip, maple syrup, milk and eggs), and if they are in the possession of a debtor engaged in raising, fattening, grazing or other farming operations. If goods are farm products they are neither equipment nor inventory;

"(4) 'inventory' if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment." RCW 62A.9-109.

not be liable for any deficiency after the secured party has disposed of such collateral under RCW 62A.9-504 or has retained such collateral in satisfaction of the debt under subsection (2) of RCW 62A.9-505.

RCW 62A.9-501(1). This is somewhat akin to prior Washington law which held that if a conditional sale vendor repossessed, he could not obtain a deficiency judgment against the vendee. *Washington Cooperative Chick Ass'n v. Jacobs,* 42 Wn.2d 460, 256 P.2d 294 (1953).

The trial court found that defendant purchased the airplane with the intent that it be used for personal rather than commercial purposes. The court further found that the aircraft was in fact used solely for personal purposes until 3 months after the purchase. Defendant then changed jobs and upon occasion thereafter used the airplane to fly to other cities in the course of his new employment, for which use he was compensated by his new employer. Still later, when faced with the financial inability to meet the monthly payments, defendant rented the plane to third persons.

Upon these facts the trial court concluded that the airplane did not constitute "consumer goods" because (1) the defendant failed to meet the burden of showing that the aircraft was used primarily for personal purposes; and (2) "consumer goods" as defined in the Uniform Commercial Code were not intended to cover expensive hobby items such as airplanes. We disagree with both conclusions.

First, we hold that the intent of the defendant at the time the plaintiff's security interest attached to the collateral is controlling and necessitates the conclusion that the airplane came within the code definition of consumer goods. We recognize, but do not reach, since they are not present here, such questions as the legal effect of the situation where there is a declaration of intent by the debtor which is false or where there is an actual use then made which is contrary to that declared.

The plaintiff, however, urges an alternate theory to support the trial court's result, contending that the defendant, when faced with the financial inability to meet the monthly

payments, rented the airplane to third parties. In fact the testimony and findings of fact do show that about 9 months after executing the security agreement the defendant did make the plane available for rental. This was a course suggested by plaintiff in an effort to generate funds to meet the payments. In terms of overall use of the plane from purchase until taking of possession by plaintiff, the evidence indicates more hours for rental use than for plaintiff's personal use. From these facts, the plaintiff concludes that the plane was not used primarily for personal purposes within the meaning of RCW 62A.9-109(1).

It is true that the cited statute refers to goods *used* primarily for personal, family or household purposes. Uniform Commercial Code § 9-109, Comment 2 states: "In borderline cases—a physician's car or a farmer's jeep which might be either consumer goods or equipment—the principal use to which the property is put should be considered as determinative." Unfortunately neither section 9-109 nor the comment is precise in stating the point of time at which the principal use is to be measured. Conceivably it could be either the principal use at the time the security interest attaches, such use at the time the debtor takes possession upon default, or the principal use to which the collateral has been put between the attachment of the security interest and taking of possession.

It is the underlying purpose and policy of the code to "simplify, clarify and modernize the law governing commercial transactions." RCW 62A.1-102(2). It is inconsistent with this declared underlying purpose and policy to require a creditor to monitor use of the collateral in order to ascertain its proper classification. The uncertainty caused by the potentially shifting status of the goods is not desirable in the commercial world. Also, there exists a potential mischief by debtors facing default who might endeavor to convert goods from the category of equipment to consumer goods to avoid a deficiency and, likewise, by creditors making the opposite claim in order to benefit from a deficiency. Our holding that the use or intent at the time the secu-

rity interest attaches controls does no violence to the language of UCC § 9-109. If the code dealt only with purchase money security interests we would have difficulty rationalizing the primary use test since there would exist little or no use to establish the classification at the time the security interest attached. However, the collateral may be owned already and put to use at the time the security interest attaches. The principal use is more relevant to classification than the antecedent intent or purpose when the debtor bought the goods months or perhaps years earlier.

We therefore agree with the court in *Franklin Inv. Co. v. Homburg*, 252 A.2d 95, 97 (D.C.C.A. 1969) that:

> For our purposes, the manner in which a product is classified is determined at the time of agreement between the parties giving rise to the security interest, and, as to them, the categorization remains unaffected by a later transfer of the product in question.

And, as stated in *In re Morton*, 9 UCC Rep. Serv. 1147, 1148-51 (1971):

> There is a measure of commercial expediency inherent in gauging compliance with Code perfection requirements by recourse to the *extrinsic circumstances prevailing at the time the security interest attaches.* . . . It seems doubtful, therefore, that the Code architects intended to inhibit commercial transactions by making filing or the occurrence of some event other than the attachment of the security interest the critical time to apply the collateral use test; however curious it is that neither § 9-109 itself nor the official comments evidence awareness of the problem.

(Footnotes omitted.) *Accord, In re Barnes*, 11 UCC Rep. Serv. 670 (1972).

We turn therefore to the second basis for the trial court's conclusion that the airplane was not "consumer goods." The trial court reasoned that the aircraft fell within the definition of "equipment" under UCC § 9-109(2) because consumer goods were not intended to cover expensive hobby items such as airplanes. The court explained that since it could not interpret consumer goods to include

this expensive hobby item, it necessarily came within the catchall definition of equipment under section 9-109(2) as goods not otherwise included in any of the other three categories. We disagree since we find nothing in the statute to imply any exclusion dependent upon cost or nature of the goods. Rather, the decisive factor is whether the goods are used or bought for use primarily for personal, family or household purposes.

In accord with this interpretation is *Atlas Credit Corp. v. Dolbow*, 193 Pa. Super. 649, 165 A.2d 704 (1960), in which the court held, without analysis, that a boat purchased for $5,980 was consumer goods. Indeed, it has been observed that

> [T]he classifications of Sec. 9109 are based solely on use or function and it is almost, if not impossible, to conceive of an item of tangible personal property that cannot be a consumer goods. Even the recently retired "Queen Mary" could qualify as a consumer goods if purchased by a billionaire for his own personal use and one recalls that the late Henry Ford, at one time, bought up entire factories for his personal museum.

*In re Trumble*, 5 UCC Rep. Serv. 543, 544 (1968).

The finding that the defendant intended the airplane for personal use conclusively brings it within the code definition of consumer goods. We do note but reject the rationale of two cases decided by a referee in bankruptcy which held that mobile homes were not consumer goods since the words "consume" and "consumer" imply the using up, wasting or destroying of the goods. *In re Sprague*, 4 UCC Rep. Serv. 702 (1966); *In re Vinarsky*, 4 UCC Rep. Serv. 707 (1966). We cannot read into the language or concept of the code any basis for such reasoning or results.

Accordingly, the judgment is reversed.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and UTTER, JJ., concur.