**Ronald T. BALSER, as Trustee for Fulton Trust # 1 and Fulton Trust # 2, and Roger F. Kahn, Plaintiffs,**

**v.**

**CESSNA AIRCRAFT COMPANY and Fulton Air Service, Inc., Defendants.**

**Civ. A. No. C81–382A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

April 30, 1981.

Gilbert H. Deitch and Gerald B. Line, Atlanta, Ga., for plaintiffs.

J. Arthur Mozley, Donald R. Andersen, Ronald A. Williamson, Glover McGhee, Michael H. Schroder, Atlanta, Ga., for defendants.

## ORDER

MOYE, Chief Judge.

The above-styled case is before the Court on motions by defendant Fulton Air Service (Fulton) to dismiss and to stay discovery. The Court will first consider the motion to dismiss since a ruling thereon will alleviate the need to rule on the motion by Fulton to stay discovery.

Fulton's motion to dismiss is based on Fed.R.Civ.P. 12(b)(1). Fulton argues that this Court lacks subject matter jurisdiction over plaintiffs' claims in that as a matter of law there is no jurisdiction under 28 U.S.C. § 1331 or 15 U.S.C. § 2310(d)(1)(B). The former statute confers jurisdiction on this Court in actions arising under the laws of the United States and the latter confers limited jurisdiction under the Consumer Product Warranties Act, 15 U.S.C. § 2301 *et seq.* (Warranties Act). Fulton argues that the cause of action found in plaintiffs' complaint fails to invoke the jurisdiction of this Court as the plaintiffs allege in their complaint.

The complaint alleges that on October 24, 1978, defendant Cessna sold and delivered aircraft Model No. 340–A, bearing manufacturer's serial number 340A0447, for ultimate resale to Fulton at its local dealership in Fulton County, Georgia. Fulton sold the aircraft to plaintiff Ronald T. Balser on February 22, 1980, who purchased the aircraft as trustee of Fulton Trust No. 1 and Fulton Trust No. 2 for use by plaintiff Roger F. Kahn, said trusts' sole beneficiary. Plaintiffs allege the existence of various warranties running from defendants to plaintiffs which allegedly were breached and were also in violation of the Warranties Act. *See* 15 U.S.C. §§ 2304 and 2308. On the basis of these alleged violations and plaintiffs' prayer for damages in excess of

$50,000, plaintiffs base jurisdiction in this Court on 15 U.S.C. § 2310(d)(1)(B).[1]

Defendant Fulton contends that jurisdiction may not be based on the Warranties Act because that Act does not extend its requirements to the sale of aircraft. Specifically, Fulton argues that an aircraft such as the one purchased by plaintiffs herein is not a "consumer product" as defined by 15 U.S.C. § 2301(1). There the Act states:

> For the purposes of this chapter:
>
> (1) The term "consumer product" means any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed).

15 U.S.C. § 2301(1). The alleged violations of 15 U.S.C. §§ 2304 and 2308, which are the bases of plaintiffs' federal question complaint, are predicated upon the sale of a "consumer product" as defined above. If the aircraft in question is not a "consumer product" under the Act, the plaintiffs will have failed to state a cause of action under which relief may be granted, justifying dismissal of this case as to defendant Fulton under Fed.R.Civ.P. 12(b)(6).[2]

Fulton initially argues that general aviation aircraft are not within the definition of "consumer product" found within the Act because the Federal Trade Commission (FTC), the agency empowered to enforce the Act, has determined aircraft not to be among the products Congress intended the Act's protections to reach. Fulton bases this statement on the deletion by the FTC of the phrase "small aircraft" from the list of examples covered by the Act, citing 41 Fed.Reg. 26,757 (1976). In response plain-

tiffs point out that the FTC statement on which Fulton relies was not a regulation acquiring the force of law, but was only a policy statement.[3] The policy statement referred to by Fulton, issued in 1976, amended an earlier one rendered in 1975, see 40 Fed.Reg. 25,721 (1975), which had *included* small aircraft in the FTC's initial definition of "consumer product." The purpose of the 1976 statement was to delete small aircraft from the agency's suggested definition of "consumer product." The FTC definition, however, is merely interpretive of the statute and does not control this Court's independent interpretation thereof.

The defendant next points the Court to the Consumer Product Safety Act, 15 U.S.C. § 2051 *et seq.* (Safety Act), which specifically excludes aircraft from its definition of "consumer product." *See* 15 U.S.C. § 2052(a)(1)(F). Defendant Fulton argues that because in the Safety Act the term "consumer product" covers items which are customarily produced or distributed for consumer use, the definition therein is so similar to the one found in the Warranties Act that Congress' refinement of the definition in the former Act should likewise apply to the latter. In response to that contention, the plaintiffs point out the different purposes of the two Acts, directing the Court's attention to the chief objective of the Safety Act to protect consumers from unreasonable risks of injury and the objective of the Warranties Act to require readily understandable warranties where any warranty is given. These differing objectives should cause the Court, plaintiffs argue, to refuse to consider the definition of "consumer product" as found in the Safety Act when construing the definition of that phrase under the Warranties Act. The plaintiffs argue that the exclusions in the former Act exist because the products ex-

---

1. The complaint also includes three counts based on state law which it urges this Court to consider under the doctrine of pendent jurisdiction.

2. The Court finds subject matter jurisdiction based on the allegations found in the complaint. Consequently, the Court converts de-

fendant's motion to one under Fed.R.Civ.P. 12(b)(6).

3. For the policy to have become a regulation it would have had to comply with the rulemaking procedures of the Administrative Procedure Act, 5 U.S.C. § 553, as required by 15 U.S.C. § 2309(a).

cluded are the subject of other regulating legislation which protects consumers from unsafe products. The plaintiffs, however, have failed to list for the Court the legislation to which they refer.

Thirdly, the defendant contends that the legislative history of the Warranties Act indicates that Congress did not intend to include aircraft within the meaning of "consumer product" since the House Report did not include aircraft in its enumeration of examples of consumer products. H.R.Rep. No. 93–1107, 93d Cong., 2d Sess., *reprinted in* (1974) U.S.Code Cong. & Ad.News 7702. To this argument the plaintiffs failed to respond.

Finally, defendant Fulton argues that this Court should follow the conclusion reached by Judge Jerry Buchmeyer of the United States District Court for the Northern District of Texas in an order dated September 24, 1980, wherein he held that the Warranties Act did not apply to a Cessna 172 Skyhawk aircraft because it is not a "consumer product" under the Act. *Conger v. Cessna Aircraft Co.*, No. CA 3–79–0716–R (N.D.Tex., filed Sept. 24, 1980) (Exhibit A to Fulton's motion). In response to Fulton's reliance on Judge Buchmeyer's order, plaintiffs show, through their counsel's affidavit, that plaintiff's counsel in the *Conger* case informed him on April 1, 1981, that *Conger* has now been transferred to Judge Robert M. Hill since Judge Buchmeyer recused himself following entry of the September 24, 1980 order. Plaintiffs in *Conger* have sought a reconsideration by Judge Hill of Judge Buchmeyer's order.

■ In a supplemental brief and affidavit filed on April 27, 1981, the plaintiffs have argued that statistical compilations issued by the Information and Statistics Division, Office of Management Systems of the Federal Aviation Administration, readily establish that the most common primary use of general aviation aircraft is personal, rather than business. The Court finds this data relevant, however, only in that it indicates that because large numbers of general aviation aircraft are used for personal reasons the aircraft purchased by plaintiffs herein *may* have been purchased and used for personal reasons. As explained below, the Court finds the determining factor in resolving the issue of coverage under the Warranties Act to be the actual use of the product bought by the purchaser.

Having surveyed Fulton's arguments and plaintiffs' responses, the Court finds no controlling authority and little persuasive authority to guide it in ascertaining whether or not Congress intended the Warranties Act to apply to sales of small aircraft. While the FTC once said that Congress did so intend coverage, it has now decided that it did not. The Congress' specific exclusion of aircraft from the definition of consumer products in the Safety Act *may* mean that in Congress' opinion an aircraft is never a consumer product or it *may* mean that had Congress wished to exclude aircraft from the definition of consumer product under the Warranties Act it would have explicitly done so. The legislative history is not of much, if any, assistance because it makes no reference to the inclusion or exclusion of aircraft at all. Finally, Judge Buchmeyer's opinion is of no persuasive effect since its basis appears to be the FTC deletion of small aircraft from the FTC's interpretation of Congressional intent.

The Court has looked to cases decided under the Uniform Commercial Code (UCC) to determine how courts have decided whether an aircraft is a "consumer good" under that body of law. Uniform Commercial Code section 9–109(1) defines "consumer goods" as goods used or bought for use *primarily* for personal, family or household purposes. Based on this definition, which is similar to the one found in the Warranties Act (tangible personal property distributed in commerce and *normally* used for personal, family, or household purposes), the Washington Supreme Court has held that an airplane purchased with the intent that it be used for personal rather than commercial purposes is a "consumer good" under UCC 9–109(1). *Commercial Credit Equipment v. Carter*, 83 Wash.2d 136, 516 P.2d 767, 77 A.L.R.3d 1218 (1973) (en banc). The specific question the court faced was

**1220**

whether the determination that the aircraft was a "consumer good" or "equipment" under the UCC should be made at the time of the attachment of a security interest or at a later time when the airplane was used commercially. The court held that the manner in which a product is classified is to be determined at the time of agreement between the parties giving rise to the security interest, and, as to them, the categorization remains unaffected by a latter transfer of the product. 516 P.2d at 769. In addition, the court held that whether a good was "equipment" or "consumer goods" did not depend on its cost; an aircraft could be held to be a "consumer good" so long as it is used or bought for use primarily for personal, family, or household purposes regardless of its cost. *Id.* at 770. In a similar case, *Cessna Finance Corp. v. Pivo*, 58 Cal.App.3d 281, 129 Cal.Rptr. 888 (1976), the California Court of Appeals applied the same test, that of the purchaser's intent at the time of purchase, to conclude that the facts before the court showed the three aircraft involved therein were not consumer goods under UCC § 9–109(1).

The above cases, interpreting a definition in the UCC which is similar to the definition in the Consumer Product Warranties Act which this Court today seeks to interpret, are persuasive in their holdings that whether or not a good is a consumer good is a factual question for resolution at trial or prior to trial on the basis of affidavits. In order for the aircraft purchased by plaintiffs to be a consumer good and for the sale of the aircraft to be covered by the Warranties Act, the facts must compel a conclusion that the aircraft was normally used for personal, family, or household purposes. That determination cannot be made by this Court as a matter of law. Accordingly, defendant Fulton's motion to dismiss for lack of subject matter jurisdiction (or for failure to state a cause of action, as the Court has construed the motion) is DENIED; the accompanying motion to stay discovery is DENIED as moot.