In re Glenn R. McFADDEN, Debtor.

WALLOCH TV & APPLIANCES,
INC., Plaintiff,

v.

Glenn McFADDEN and A. L. Tenney,
Trustee, Defendants.

Adv. No. 80–262.

LR 80–221.

United States Bankruptcy Court,
E. D. Arkansas, W. D.

Jan. 25, 1982.

W. J. Walker, Little Rock, Ark., for plaintiff.

Collins Kilgore, Jr., Little Rock, Ark., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT DENYING COMPLAINT FOR RECLAMATION OF A SONY BETAMAX VIDEO RECORDER CASSETTE UNLESS A PROPER SHOWING IS MADE IN WRITING WITHIN 12 DAYS THAT DEBTOR HAS NO EQUITY

DENNIS J. STEWART, Pankruptcy Judge.

On July 7, 1980, the plaintiff filed a complaint for reclamation of several items of personal property in which it purported to hold a valid and perfected security interest. After an evidentiary hearing, the court of bankruptcy entered its findings and judgment on August 28, 1980, nunc pro tunc to August 6, 1980, to the following effect:

"ORDER

This case came on for trial on August 6, 1980, on the petition for reclamation by Walloch TV & Appliances, Inc. by W. J. Walker, its attorney, seeking to recover One (1) Pioneer Receiver, Model SX850, Serial No. 1269; One (1) Pioneer Turntable, Model DL 117, Serial No. 9772; Two (2) Ultralinear Speakers, Model 100–C–O, Serial No. 4041, 6587; One (1) Auto Feed Cartridge, Model AT 10, Serial No. N/S and One (1) Sony Betamax, Model KV 1901, Serial 4348, together with the answer of the defendant by R. L. Brown, his attorney, alleging that the petitioner had no security interest in One (1) Auto Feed Cartridge, Model AT 10, Serial No. N/S and One (1) Sony Betamax Model KV 1901, Serial No. 4348, and that the following property was stolen: One (1) Pioneer Receiver Model SX 850, Serial No. 1269; One (1) Pioneer Turntable Model DL 117, Serial No. 9772 and One (1) Ultralinear Speaker Model 100–C–O, Serial No. 4041, 6587.

The Court finds from the preponderance of the testimony that the chattels in question were used substantially for business and income purposes of the debtor; that under Arkansas law, to perfect a lien against third parties, including a trustee in bankruptcy, requires, on business equipment, that there be a dual filing with both the Secretary of State and the Recorder of the county in which the debtor resides. *Ark.Stats.* 85–9–401(c); *Ark. L.Rev.* Vol. 18, Number 1, p. 39. Admittedly, Walloch made no filing with either the Recorder of Pulaski County or the Secretary of State.

The Court further finds and holds that Walloch is a general creditor and its petition for reclamation filed July 7, 1980, should be, and hereby is, dismissed.

The Court further finds that this Order was misplaced or lost and the same is entered this date nunc pro tunc to August 6, 1980.

FILED at Little Rock, this 28th day of August, 1980."

Plaintiff then appealed to the district court which, on November 19, 1981, issued its order of remand to the bankruptcy court containing the following considerations:

"ORDER

Pursuant to and in accordance with the Memorandum Opinion entered this day, IT IS HEREBY ORDERED AND ADJUDGED:

That the above-styled cause is remanded to the Bankruptcy Court for further hearing.

Entered this 19th day of November, 1981."

"MEMORANDUM OPINION

The Bankruptcy Court held herein that a Sony Betamax video cassette recorder, owned by the debtor, was used substantially for business and income purposes of the debtor; and that, since appellant did not file on the equipment with the Secretary of State and the County Clerk, as

required for business equipment in Arkansas by *Ark.Stat.Ann.* § 85–9–401(c) (Add.1961), appellant was a general creditor and dismissed its Petition for Reclamation.

Appellant seeks a remand, contending that the Bankruptcy Court refused to allow appellant to present rebuttal testimony and to otherwise present evidence to support its position.

This Court has examined the record herein and can find no basis for appellant's contention that the Bankruptcy Court refused to allow cross-examination or testimony. However, neither can this Court discern in the record a ny factual basis for the Bankruptcy Court's holding that the recorder was business equipment. This Court certainly cannot decide the issues on the record before it. The recorder might, indeed, be business equipment, but the facts were insufficiently developed to justify such a conclusion.

Therefore, this matter must be, and hereby is, remanded to the Bankruptcy Court for further hearing to determine to what extent appellee's use of the recorder in his business was "significant." Both parties will be given an opportunity to develop the facts as fully as necessary. *Hoffman v. First National Bank of Pompano Beach, Fla.,* 392 F.2d 202 (5th Cir. 1968)."

After the remand of the action to the court of bankruptcy, a hearing on the issue formulated by the order of remand—i.e., whether the "significant" or "primary" use of the Sony Betamax video cassette recorder—was conducted on January 6, 1982. The debtor then appeared personally and by counsel, Collins Kilgore, Esquire, and the claimant appeared by W. J. Walker, its counsel. According to the admissible, probative and credible evidence which was adduced in the course of that hearing, the following findings of fact are warranted:

### I

█ The debtor received the subject video cassette recorder in September, 1977. At that time, he was employed as a part-time counselor with the Jim Ranchino Agency in Conway, an organization which conducted polls and samples of opinion and marketing surveys. He variously testified that, as of the time of the purchase, he was a graduate student at Henderson State College and that he had received his counseling degree in August of that year. He stated that, when he purchased the recorder, he did not initially mention the purpose for which he was interested in such a recorder; that it was the claimant's salesman who initially suggested that the recorder could be used in the counseling business; that, from September 8, 1977, until January 1978, he used the recorder to play tapes made by Jim Ranchino to groups of employees who met at the debtor's home for the purpose of listening to the tapes; that these groups met in his home on an average of once per week for periods of times varying from 30 minutes to a "couple of hours" to listen to these "training tapes" containing Jim Ranchino's instructions on how to conduct polls and surveys; that, during this same period of time, the debtor also used the recorder for his "personal" use to record "issue-related programs" at an average rate of one 60-minute tape per week; that, thereafter, in January, 1978, he terminated his employment with the Jim Ranchino Agency and became a campaign aide to Doug Brandon, who was then running for the seat in the second congressional district; that he worked in the position until November, 1979; that, during this period of time, he made no business use of the recorder, and used it "occasionally" for personal purposes; that, beginning in November, 1979, he became a program coordinator for the Urban League; that, in this capacity, he served as a liaison officer between the league and local "advisory councils"; that in this capacity, he "maybe once showed one tape to one [local advisory council]"; that, during this period of time, he continued to use the recorder for personal purposes; that, beginning in May, 1980, the debtor became a "program coordinator" for United Way in which capacity he "developed the fiscal and financial parts of a crime prevention program"; that, in this capacity, he used the

cassette recorder for business purposes "not at all"; that, during the same period of time, he continued to use the recorder for personal purposes; and that, in February, 1981, he became unemployed, working only part-time thereafter in employments in which the recorder was not used for any business purpose.

Based on the above and foregoing testimony, the debtor conclusionarily estimates that 60% of his use of the recorder was for business and 40% was personal. But this opinion is not borne out by an analysis of the more specific factual testimony which the debtor has rendered and which is summarized above. Even at the outset of his use of the recorder, from September 8, 1977, to the termination of his employment with the Jim Ranchino Agency, the debtor, according to his own testimony, used the recorder for business purposes only on an average of once a week for a period of time which may or may not, according to his testimony, exceed the 60-minutes per week which was spent on personal, nonbusiness use. The evidence which has been adduced through the uncontradicted testimony of the debtor, as noted above, is to the effect that the "business" use of the recorder varied from 30 minutes to a greater period of time once a week. This testimony, rendered by the debtor who should have had the motive and been willing to specify the average time per week spent on business use if it in fact exceeded the average spent on personal use, warrants an inference that the average weekly hour spent on personal use exceeded the average per week spent on use for business purposes. This finding is sufficient to warrant a conclusion that the "primary" use (See the Advisory Committee's Note to § 9–401 of the Uniform Commercial Code) during the period from September 8, 1977, to January, 1978, was personal rather than business. Under the provisions of § 9–401(3) of the Uniform Commercial Code, it is the use of the chattel at the time of filing of the financing statement which controls the place of filing, even though the use may thereafter change.

"(3) A filing which is made in the proper place in this state continues effective even though the debtor's residence or place of business or the location of the collateral or its use, whichever controlled in the original filing, is thereafter changed."

Even if the subsequent use of the recorder is relevant to the matter of filing, then the evidence summarized above also clearly shows that, after the debtor terminated his employment with the Jim Ranchino Agency, he made, by his own admission, no business use of the recorder. All his use of it thereafter was personal. Therefore, inasmuch as his use of the recorder was primarily personal, the recorder is properly classifiable as "consumer goods" within the meaning of § 9–109 of the Uniform Commercial Code and single filing is sufficient under § 9–401 of that Code to perfect the security interest.

II

Further, even if it could be said that a "significant" or "primary" use of the recorder was in business endeavors (and, for the foregoing reasons, it cannot be), it was still used exclusively within the household of the debtor and is therefore "household" use within the meaning of § 9–109 of the Uniform Commercial Code. In providing that "consumer goods" include those intended for household use, see § 9–109, it appears that the framers of the Uniform Commercial Code intended that single filing should be sufficient to perfect a security interest in goods used within a nonbusiness household, whether actually used for personal or family use or for other purposes. If this is not so, it is difficult to imagine why "household use" is described in § 9–109 as a category of "consumer goods" than either "personal" or "family" use. And such an interpretation, furthermore, is wholly consonant with considerations of justice when a seller of consumer goods intended for use within the home should not have to guess whether some of the use might not be for purposes related to the purchaser's business. (In this case, for instance, the debtor, in his testimony, admits that he did not apprise the seller of any

intended business use). Rather, it appears that, when the use which is made of the personal property is within the household, the property is to be classified as "consumer goods" and the single filing of a financing statement is sufficient to accomplish perfection.

### III

As a corollary of the foregoing paragraph, it must be noted that, if a debtor is free to claim that household goods have been actually used, albeit within the home, primarily for business purposes, then the creditor will always be at the mercy of the debtor, who alone can purport to know what the actual use of the property was. Nevertheless, even if the debtor is to be permitted such license in determining the issue, the court can and should make an assessment of the credibility of the debtor. In this case, the court has done so, as is peculiarly the province and duty of a trial court in bankruptcy cases. *In re Windle,* 654 F.2d 329, 331 (8th Cir. 1981):

> "The deference owed by appellate courts to finders of fact is at its highest where the issue turns on the resolution of a direct conflict between live witnesses. Here, all the witnesses who testified on the subject had a strong personal interest."

Thus, even if the debtor's testimony should be held to warrant a finding that business use was 60% and personal use 40%, this court finds it not credible in that regard, considering all factors which relate to an assessment of a witness's credibility, including demeanor and appearance.

### IV

■■■ But, even if it should be found that the claimant's security interest is not perfected (and, for the foregoing reasons, it cannot be), perfection of a security interest is not a necessary element in a creditor's *inter partes* suit to recover specific property from the debtor. Perfection is necessary only to defeat the claim or defense of a third party, such as the trustee in bankruptcy, who it appears, makes no claim to this property on behalf of the creditors or estate. Nor is it anywhere represented that the value of the recorder will be used for the creditors' or the estate's benefit. A security interest has efficacy between the parties without any of the incidents of perfection. Therefore, in the case at bar, it must be held that the plaintiff, Walloch TV, may reclaim the cassette recorder without demonstrating perfection.

### V

■■■ Even if a creditor has an enforceable security interest in property, however, it has continually been held that, in Chapter 13 proceedings, "where the debtor has an equity in the property or it is necessary to his performance under the plan and where the creditor's security will not be impaired by a stay, the creditor may be stayed from foreclosing on appropriate conditions to cure defaults and maintain payments on his claim to the extent that it is secured." Advisory Committee's Note to Rule 13–401 of the Rules of Bankruptcy Procedure. The debtor, according to the foregoing findings and conclusions, has made no showing that the recorder is necessary to his rehabilitation. But the burden of demonstrating that the debtor has no equity in the property is upon the secured creditor. See § 362(g)(1) of the Bankruptcy Code. According to the undersigned's review of the files and records in this case, the secured creditor in this case has not yet sustained its burden in this regard. Therefore, reclamation must be denied unless and until the creditor demonstrates by means of an affidavit of an appropriate person having personal knowledge of the pertinent facts that the balance due on the recorder equals or exceeds its value as of the date of the inception of these Chapter 13 proceedings.

### VI

Inasmuch as counsel have agreed in the course of the hearing of January 6, 1982, that the remand order applies only to the cassette recorder, the principles stated above are only applicable to that item of personal property.

## VII

For the foregoing reasons, it is hereby

ADJUDGED, that the plaintiff's complaint for reclamation of the Sony Betamax video cassette recorder be, and it is hereby, denied unless and until, within 12 days of the date of entry of this judgment the plaintiff demonstrates in writing that the debtor has no equity in the recorder.