NATIONAL BUSINESS SYSTEMS, INC.
and Richfield Bank & Trust
Co., Appellees,

v.

BORG–WARNER ACCEPTANCE
CORPORATION, and Thomas
W. Ichelson, Appellants.

No. 85–5153.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 11, 1985.

Filed June 10, 1986.

---

David K. Hackley, Edina, Minn., for appellants.

James W. Reuter, Minneapolis, Minn., for appellees.

Before LAY, Chief Judge, FAGG, Circuit Judge, and McMANUS,* Senior District Judge.

FAGG, Circuit Judge.

This diversity case arises from the sale in Minnesota of a yacht in which Richfield Bank & Trust Co. (Richfield Bank) held a perfected security interest and the yacht's removal by the purchaser, Thomas Ichelson, to Iowa, where Borg-Warner Acceptance Corporation (Borg-Warner) filed a financing statement on the yacht. On the basis of stipulated facts, the district court entered an order granting summary judgment to Richfield Bank and National Business Systems (NBS) on their claims that (1) Richfield Bank's security interest in the

---

* The HONORABLE EDWARD J. McMANUS, Senior Judge, United States District Court for the Northern District of Iowa, sitting by designation.

yacht is superior to Borg-Warner's and (2) Ichelson holds the yacht subject to Richfield Bank's security interest. In its order the district court also entered judgment against Borg-Warner and Ichelson (collectively appellants) on their indemnity claim against NBS for breach of warranty of title. The appellants appeal from the district court's order. We affirm.

In 1979, NBS, a Minnesota corporation with its principal place of business in Hennepin County, Minnesota, bought a yacht from Tonka Bay Yachts (TBY) on which it intended to entertain its customers. NBS financed the majority of the purchase price of the yacht through an installment sales contract and security agreement entered into with TBY. TBY immediately assigned its security interest in the yacht to Richfield Bank. Richfield Bank perfected its security interest in the yacht by filing financing statements with the Minnesota Secretary of State and the Hennepin County Recorder. See Minn.Stat.Ann. §§ 336.9–302, .9–401, .9–402 (West Supp.1986). Richfield Bank has not filed a financing statement on the yacht in Iowa.

After entertaining customers on the yacht for approximately two years, NBS turned the yacht over to TBY under a brokerage agreement which provided that TBY would sell the yacht in exchange for a commission. At the time the brokerage agreement was signed, NBS reminded TBY of Richfield Bank's security interest in the yacht.

Ichelson, an Iowa resident, expressed interest in buying the yacht, and TBY referred him to Borg-Warner to obtain financing for the purchase. Both Borg-Warner and Ichelson knew prior to the sale that TBY did not own the yacht and they also knew that either NBS or one of its vice-presidents owned the yacht. However, neither of them checked with the Minnesota Secretary of State, the Hennepin County Recorder, or any other official to determine if a security interest had been filed on the yacht. Instead they relied on TBY's fraudulent assertions that NBS had paid TBY the full purchase price of the yacht and that no other liens existed on the yacht.

TBY and Ichelson entered into a retail installment contract for the sale of the yacht. TBY assigned its interest in the contract to Borg-Warner and Borg-Warner in turn paid TBY the balance due on the yacht. A few days later Ichelson moved the yacht to Iowa where it is stored during the winter. Borg-Warner then filed a financing statement on the yacht in Iowa. Richfield Bank does not contest that this filing perfected Borg-Warner's security interest in the yacht in Iowa. See Iowa Code §§ 554.9302, .9401, .9402.

TBY told NBS it would pay off the Richfield Bank loan with the proceeds of the sale, but after one installment payment TBY reneged on this promise. TBY has since filed for bankruptcy.

The first issue we must address in this appeal is whether Richfield Bank's security interest in the yacht remained perfected despite the yacht's removal to Iowa. If so, its security interest is superior to Borg-Warner's because Richfield Bank perfected its interest in the yacht before Borg-Warner filed its financing statement in Iowa. See U.C.C. § 9–312(5)(a) (citations will be directly to the Uniform Commercial Code because both Iowa and Minnesota have adopted the controlling sections of the Code in nearly identical forms). Furthermore, because Ichelson does not contend on appeal that he is entitled to the protection of a buyer in the ordinary course of business, see id. §§ 9–307(1), 1–201(9), his interest in the yacht would be subject to Richfield Bank's security interest. See id. § 9–307(3).

Section 9–103 specifies the procedures a secured creditor must follow in multistate transactions in order to maintain perfection of its security interest. For purposes of this appeal, we need only be concerned with two types of multistate transactions addressed in section 9–103.

If collateral classified as an ordinary good is moved to another state, a secured creditor must reperfect its security interest in the new state within four months of the

collateral's move. If the creditor fails to reperfect its security interest within this time, its security interest becomes unperfected and is "deemed to have been unperfected as against a person who becomes a purchaser *after* removal." *Id.* § 9–103(1)(d)(i) (emphasis added).

If, however, the collateral is classified as a mobile good (defined as a good normally used in more than one jurisdiction) and equipment, the creditor's obligation to reperfect its security interest arises only if the debtor moves to another state. *See id.* § 9–103(3)(a), (e).

■ The appellants advance two arguments to support their claim that Richfield Bank's security interest has lapsed. First, they argue that Ichelson, as a buyer of consumer goods, was entitled to the special consumer protections embodied in section 9–103(1)(d)(iii). This section states that in order for Richfield Bank to assert priority over a buyer of consumer goods, it must follow the reperfection procedures specified for ordinary goods. These procedures would require Richfield Bank to have reperfected its security interest in the yacht in Iowa within four months of the removal of the yacht to Iowa. *See id.*

This argument fails because Ichelson has not shown himself to be a buyer of consumer goods. In the detailed stipulation of facts presented to the court below and before us on appeal, there is no indication as to why Ichelson bought the yacht or for what purpose he has used it. Facts of this nature are indispensable to a determination of whether Ichelson was a buyer of consumer goods, *see id.* § 9–109(1); and without them the appellants have no basis to argue that the special protection created in section 9–103(1)(d)(iii) for buyers of consumer goods governs this case. Thus, we need not address whether Ichelson's purchase of the boat *before* it left Minnesota would defeat his claim even if he were a buyer of consumer goods. *See id.* § 9–103(1)(d)(i).

In the alternative, the appellants argue that section 9–103(3) does not apply because the yacht was not equipment at the time of the sale to Ichelson. The appellants acknowledge that the yacht is a mobile good, thus satisfying the other prong of section 9–103(3). *See id.* § 9–103(3)(a).

Section 9–109 of the Code defines equipment as a good "used or bought for use primarily in business." *Id.* § 9–109(2). Appellants concede that until NBS placed the yacht with TBY under the brokerage agreement, the yacht was equipment because NBS used it for the business purpose of entertaining customers. The appellants contend, however, that once NBS placed the yacht with TBY for sale, it became TBY's inventory and ceased to be equipment for purposes of section 9–103(3).

This argument lacks merit because the relevant time to classify the yacht for determining the requirements and consequences of perfection is the time surrounding the transactions that originally gave rise to Richfield Bank's security interest in the yacht. *See, e.g., In re Benton Trucking Service, Inc.,* 21 Bankr. 574, 578 (Bankr.E.D.Mich.1982) (time at which the security agreement is executed); *In re Teel,* 9 Bankr. 85, 89 (Bankr.N.D.Tex.1981) (time at which the security interest attaches); *In re Barnes,* 11 U.C.C.Rep.Serv. 670, 672 (Callaghan) (Bankr.D.Me. Sept. 15, 1972) (at or about time when the security interest attaches); *McGehee v. Exchange Bank & Trust Co.,* 561 S.W.2d 926, 930 (Tex.Civ.App.1978) (time at which the security interest attaches); *Commercial Credit Equipment Corp. v. Carter,* 516 P.2d 767, 769–70 (Wash.1973) (time at which the security interest attaches); J. White & R. Summers, Uniform Commercial Code § 23–13 at 945 (2d ed. 1980) (time of loan or purchase).

Indeed, if Ichelson had not moved the yacht from Minnesota, the Code leaves no doubt that an initially proper filing by Richfield Bank would remain in effect despite a later change in the use of the yacht. *See* U.C.C. § 9–401(3). Logic compels a similar result in cases where the collateral moves across state lines.

"Upon [the] classification [of collateral] turn important commercial and legal decisions, such as the necessity and place of filing a financing statement to perfect a security interest in the collateral." *In re Barnes*, 11 U.C.C.Rep.Serv. at 671. *See also* U.C.C. §§ 9–302; 9–401. Creditors necessarily must make these crucial decisions based upon information in their possession at the time they are attempting to perfect their security interests. If creditors were not allowed to rely on this information, they would be obligated to monitor continually the debtor's use of the collateral. Such an obligation would run directly counter to the Code's purpose of making "the process of perfecting a security interest easy, simple and certain." *James Talcott, Inc. v. Franklin National Bank of Minneapolis*, 194 N.W.2d 775, 786 (Minn. 1972). *See Carter*, 516 P.2d at 769; White & Summers § 23–13 at 945; *see also In re Teel*, 9 Bankr. at 89; *McGehee*, 561 S.W.2d at 930.

Therefore, we hold that the pertinent time to determine whether or not the yacht was equipment for purposes of section 9–103(3) is the time surrounding the purchase of the yacht and the creation of the security interest. Because at that time the yacht was indisputably equipment, and because the yacht is a mobile good, Richfield Bank's security interest remained perfected despite the yacht's movement to Iowa, *see* U.C.C. § 9–103(3). Hence the district court properly granted summary judgment to Richfield Bank on its claims.

We must next address whether the district court properly denied appellants' indemnity claim against NBS for breach of the automatic warranty of title provision of section 2–312. *See id.* § 2–312. Because the appellants have stipulated to facts that negate this warranty, we hold the district court correctly denied the claim for indemnity.

Under the automatic warranty of title provision of the UCC, a seller warrants that the goods will be delivered free from security interests of which the buyer has no knowledge. *See id.* § 2–312(1). This warranty is excluded, however, by circumstances surrounding the sale that "give the buyer reason to know that the person selling does not claim title in himself." *Id.* § 2–312(2).

In the district court the appellants proceeded on the theory that TBY was the seller of the yacht. In their answer they claimed Ichelson, as a buyer in the ordinary course of business, gained clear title to the yacht when TBY, a merchant in the business of selling yachts, sold the yacht to Ichelson. *See id.* §§ 2–403(2); 9–307(1). According to their theory as expressed in their answer, NBS surrendered all ownership interests in the yacht to TBY which in turn was able to pass title in the yacht to Ichelson. *See id.* § 2–403(2). In order to support the theory that clear title passed to Ichelson at the time of the sale, it was crucial for the appellants to label TBY the seller of the yacht. Although the appellants have not pursued this theory on appeal, the stipulations supporting the theory remain in effect.

Indeed, it was also important on appeal for the appellants to assert that TBY was the seller of the yacht. If TBY was not the seller of the yacht, the appellants would have lacked factual support to argue that the yacht should be considered TBY's inventory for purposes of determining the requirements of reperfection.

Regardless of the reasons for their stipulations, the appellants cannot escape from the fact that they have stipulated that TBY was the seller and that they knew TBY did not claim title in itself for the yacht. According to the explicit language of section 2–312(2), these stipulations lead to the conclusion that the warranty was excluded. Thus, the district court properly denied the appellants' indemnity claim against NBS for breach of automatic warranty of title.

On appeal, the appellants also claim that they are entitled to indemnity from NBS due to the breach of TBY's express warranties under section 2–313. Because they did not raise the express warranty claims below, we will not address them

here. *Rogers v. Masem,* 774 F.2d 328, 332 (8th Cir.1985); *St. Louis Developmental Disabilities Treatment Center Parents' Association v. Mallory,* 767 F.2d 518, 521 (8th Cir.1985).

Accordingly, the order of the district court is affirmed.