Ed ZEAGLER and B.J. Zeagler,
Plaintiffs–Appellants,

v.

CUSTOM AUTO, INC., an Alabama corporation, B.J. Kennamore, and Kennamore & Kennamore, Defendants–Appellees.

No. 88–7738
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Aug. 21, 1989.

---

Lindsey Mussleman Davis, Holt, McKenzie, Holt, Mussleman, Florence, Ala., for plaintiffs-appellants.

Michael J. Bernauer, Florence, Ala., for defendants-appellees.

Before FAY, HATCHETT and CLARK, Circuit Judges.

PER CURIAM:

The plaintiff Ed Zeagler appeals an order entered in the United States District Court for the Northern District of Alabama, granting the defendant Custom Auto Inc.'s motion for summary judgment. Because we find that there remains in dispute a genuine issue as to a material fact, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) we reverse the order of the district court.

The dispute in this case arose after the plaintiffs Ed and B.J. Zeagler purchased for $27,500 a used Mercedes 300E from the defendants, B.J. Kennamore, Custom Auto, Inc., and Kennamore and Kennamore, who are in the business of selling foreign cars. Apparently, B.J. Kennamore made the sale. The Mercedes had been wrecked before the

sale. The Zeaglers claim that the defendants made misrepresentations concerning the repair job done and the condition of the car before the sale, although it is clear that the Zeaglers knew that the car had been wrecked before they bought it.

The plaintiffs sued for damages under Alabama common law and the Alabama Deceptive Trade Practices Act (ADTPA), Ala.Code § 8–19–1 *et seq.* (1984). Pursuant to the defendant's motion, the court ordered Zeagler to elect a remedy under either one or the other theory, and the plaintiffs elected to proceed under the ADTPA. The ADTPA provides a private right of action to consumers against persons who violate the provisions of the Act. The Act defines "consumer" as "any natural person who buys goods or services for *personal, family* or *household* use." Ala.Code § 8–19–3 (emphasis supplied).

The defendants moved for summary judgment contending that the ADTPA does not apply to this case because the plaintiffs are not "consumers" as contemplated by the Act.[1] The district court granted the motion, stating that "Zeagler admitted in his deposition that the Mercedes was purchased for resale, which would disqualify the Zeaglers as consumers under the Act.... The Zeaglers present no evidence that they are consumers." Record on Appeal Ex. 29–3.

The parties are unable to direct us to any Alabama case which applies the ADTPA definition of consumer. However, an examination of some applications of the same or similar definitions of "consumer" and "consumer goods" in other contexts is helpful.

Although the Uniform Commercial Code does not have a specific definition for a "consumer," its treatment of "consumer goods" seems relevant. Article 9 of the Uniform Commercial Code divides goods, for many purposes, into four mutually exclusive categories: consumer goods, equip-

---

1. The defendants assert as alternative grounds for summary judgment that the Zeaglers presented no evidence that any affirmative misrepresentation was made as to the condition of the car, and that the ADTPA provides for no recovery in such a case. The district court did not address this claim and we express no opinion as to its merit.

ment, farm products and inventory. Section 9–109 defines goods as consumer goods "if they are used or bought for use primarily for personal, family or household purposes." The official commentary to that section explains that "[i]n borderline cases ... the principal use to which the property is put should be considered as determinative."

Several courts have employed other formulations to determine whether a good is a consumer good under Article 9 in borderline cases. Most have relied upon the party's actual use of the good. In *In re Ware*, 59 B.R. 549 (Bkrtcy.N.D.Ohio 1986) the court held that tools and equipment used in a remodeling business were consumer goods where the business "did not occupy a significant percentage of [the consumer's] working hours" and where "these activities were more of a 'sideline' than an actual line of work." *Id.* at 552. Thus it was the purchaser's more significant use of the good which the court found to be determinative. *See also In re McFadden*, 18 B.R. 758 (Bkrtcy.E.D.Ark.1982) (video recorder held to be consumer good where court found that "average weekly hour spent on personal use exceeded the average per week spent on use for business purposes.") *Id.* at 761.

Other courts have held that the intent of the purchaser at the time of purchase is controlling. *See Commercial Credit Equip. Corp. v. Carter*, 83 Wash.2d 136, 516 P.2d 767 (1973) (en banc) ("[W]e hold that the intent of the defendant at the time is controlling.... We recognize, but do not reach, since they are not present here, such questions as the legal effect of the situation where there is a declaration of intent ... which is false or where there is an actual use then made which is contrary to that declared.") *Id.*, 516 P.2d at 769.

■ Ultimately, however, in a truly borderline case the determination is best treated as one to be made by the trier of fact. In *Marshall v. Fulton Nat. Bank*, 152 Ga.App. 121, 262 S.E.2d 448 (1979), *rev'd*

*on other grounds*, 245 Ga. 745, 267 S.E.2d 225 (1980), the court addressed a situation in which there was evidence that an automobile was purchased for both business and personal use. The court held that "[t]he evidence as to whether or not the automobile was consumer goods or was purchased for use in plaintiff's business is not clear and absolute although it is sufficient for the jury to make a determination either way." *Id.*, 262 S.E.2d at 450–51. We believe this to be the best approach in borderline cases.

■ The evidence we find in the record, including documentary evidence and depositions of the parties involved, reveals that the plaintiff's status under the ADTPA is not so clear as the district court states. While Mr. Zeagler admitted in his deposition that it was his intention to resell the car, and that he began to advertise the car for sale soon after he purchased it, there is no question that he made extensive personal use of the car as well. In his deposition, Zeagler testified that he had purchased the car "for the thrill of owning and driving a Mercedes." (Zeagler depo. at 29). It is not disputed that he put approximately 4,000 miles on the car during the six months after he bought it, until a mechanic advised him that the car was unsafe to drive. Zeagler also stated that he had never dealt in automobiles, (Zeagler depo. at 7) nor had he ever procured cars for anyone else to sell. (Zeagler depo. at 8).

It is therefore not necessary for us to decide here whether the definition of "consumer" under the Alabama statute should be read to require that the purchased goods be employed *primarily* for personal use, nor whether the purchaser's intent at the time of the purchase is dispositive. In this case, there is substantial evidence to support a finding that the plaintiffs intended to make personal use of the car when they bought it and that they subsequently did so. The question of the purchaser's status under the Act is thus properly one for the finder of fact.[2]

---

2. We note also that American consumers quite regularly buy automobiles with the intent to resell them when it becomes advantageous. It would thwart the stated purpose of the ADTPA to penalize car buffs by holding that a willingness to resell the car *at some time subsequent* to

The district court's order granting the defendants' motion for summary judgment is therefore,

REVERSED.

purchasing it disqualifies the buyer as a matter of law from protection under Alabama's Deceptive Trade Practices Act.