**ROOSEVELT FEDERAL SAVINGS AND LOAN ASSOCIATION Plaintiff-Respondent,**

v.

**B.J. CRIDER, a/k/a Billy Joe Crider, and Mary Ann Crider, Defendants-Appellants.**

No. 14600.

Missouri Court of Appeals, Southern District, Division One.

Dec. 29, 1986.

---

Robert L. Bradley, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for plaintiff-respondent.

Thomas L. Williams, Sylvia K. Byrnes-Ales, Joplin, for defendants-appellants.

ROBERT G. DOWD, JR., Special Judge.

Defendants, B.J. Crider, a/k/a Billy Joe Crider (B.J.), and Mary Ann Crider, appeal from a judgment in favor of Roosevelt Federal Savings and Loan Association (Roosevelt) in the amount of $2,322.51, with interest at the rate of 8 percent per annum from September 17, 1981, and $500 attorney's fees. The judgment represented the balance due on a promissory note, executed by B.J. and Mary Ann, on which Roosevelt claimed it was a holder in due course.

The relevant evidence, and reasonable inferences to be derived therefrom, before the trial court can be summarized as follows. In December, 1975, B.J. was solicited at his home in Seneca, Missouri, by representatives of Exterior Products, Inc. (Exterior), and was shown several samples of their siding products. B.J. entered into a contract with Exterior for "rustic looking," fiberglass siding, which carried a 35-year guarantee, to be installed on their home in Seneca and also their cabin which was situated on the shores of Grand Lake.

The siding was installed in December, 1975, when the weather ranged from 50 to 60 degrees Fahrenheit during the day and fell close to freezing at night. The installation took three to four days. On January 12, 1976, B.J. and Mary Ann executed a promissory note to Exterior for $7,728 carrying an 8 percent per annum interest and payable in 96 installments of $80.50. Under the terms of the note, the Criders were to make the installments payable to Exterior, but were to deliver the payments to the offices of Roosevelt. Exterior subsequently endorsed the note to Roosevelt.

Two to three weeks after installation, the siding buckled on both the house and cabin and pulled away from the structures. On the same day that B.J. discovered the defects, he notified Exterior by telephone. Within a month after the first complaint, B.J. made approximately 24 telephone calls to Exterior's office. In January, 1976, B.J. went to Exterior's office located in Spring-

field "[t]o make a formal complaint," but was not allowed to speak to anyone in authority. He made four trips from Seneca to Springfield to complain, but was never allowed beyond Exterior's receptionist.

In April, 1980, the Criders filed suit against Exterior in Newton County, Missouri. Exterior filed a motion to dismiss, which was overruled by the court. The Criders stopped making payments to Roosevelt on the promissory note in September, 1981. In June, 1983, after receiving evidence, the Newton County court awarded the Criders a default judgment against Exterior for $10,000.

Roosevelt brought this action in the Jasper County Circuit Court to enforce the terms of the promissory note as a holder of the instrument. The answer asserted as an affirmative defense that the siding was a consumer good, thus protected by § 408.-405,[1] and counterclaimed for a setoff.

A trial was had on July 31, 1985, after which the trial court requested the parties file suggestions as to whether consumer goods or services protected under § 408.-405 is applicable to exterior siding. Mary Ann did not appear at trial in person, but did so by attorney. No request was made that a default judgment be entered against her for failure to file responsive pleadings. Subsequently, the court entered judgment for plaintiff, finding exterior siding is not "consumer goods or services." The Criders' motion for a new trial was overruled, and they appeal.

We reverse, and find exterior siding is "consumer goods" for the purposes of § 408.405. We remand to the trial court for a determination of the amount of damages sustained by the Criders for purposes of setoff against Roosevelt's claim.

Sections 408.400–.415 have appropriately been called the Missouri Consumer Obligations Act in a law review article, *Recent Developments: Commercial Transactions—Consumer Protection—Preservation of Consumer Defenses Under the New Missouri Legislation,* 19 St. Louis U.L.J.

395 (1975), (hereinafter cited as *Recent Developments*). For the sake of clarity, we shall refer to these sections as the Act.

Section 408.405 reads as follows:

The rights of a holder or assignee of an instrument, account, contract, right, chattel paper or other writing other than a check or draft, which evidences the obligation of a natural person as buyer, lessee, or borrower in connection with the purchase or lease of consumer goods or services, are subject to all defenses and setoffs of the debtor arising from or out of such sale or lease, notwithstanding any agreement to the contrary, only as to amounts then owing and as a matter of defense to or setoff against a claim by the holder or assignee; provided, however, with respect to goods only, the rights of the debtor under this section may be asserted to the seller at the address at which he did business at the time of the sale and must be so asserted within ninety days after receipt of the goods.

■ The Act was designed to limit the holder in due course doctrine in consumer transactions by preserving the rights of purchasers of consumer goods and services. A holder in due course traditionally takes free of all defenses that may have existed between the prior parties in the underlying transaction. *Kraemer v. Leber,* 267 S.W.2d 333, 339 (Mo.App.1954). The Act, therefore, places the consumer in a much stronger bargaining position by allowing him to retain the right to withhold payment until the seller performs. This provides incentive for the financer to align with the consumer to prevent the complaint from culminating in a defense to an action for payment of the note. *Recent Developments,* supra, 402–403, (cited as authority in *Drew v. Chrysler Credit Corp.,* 596 F.Supp. 1371, 1376 (W.D.Mo.1984)).

■ The Act evidences a clear policy choice by the legislature to shift the risk of loss as to seller's misconduct to the financer, emphasizing the ability of the financer

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

to conduct a more careful screening of the sellers with whom he deals. *Recent Developments,* supra, at 403. This is especially true where the financer was initially involved in the credit transaction, as is the case here,[2] and directly benefitted therefrom. *Recent Developments,* supra, at 403. The Act is clearly "remedial legislation," *Drew,* supra, at 1376, defined as "[s]tatutes enacted for the protection of life and property, or which introduce some new regulation conducive to the public good...." *City of St. Louis v. Carpenter,* 341 S.W.2d 786, 788 (Mo.1961). Remedial statutes should be construed liberally to include those cases which are within the spirit of the law and all reasonable doubts should be construed in favor of applicability of the statute to the case. *State ex rel. LeFevre v. Stubbs,* 642 S.W.2d 103, 106 (Mo. banc 1982).

At the outset, we note that the author of a law review article, published soon after the Act became effective, used exterior siding as an example for application of the Act. *Recent Developments,* supra, at 406. The author assumed that siding would fall within the protection of the Act and predicted the courts would only have trouble separating out the "goods" and "services" aspects of the home improvement for purposes of the 90 day provision within the Act which requires the consumer, for goods only, to assert his rights against the seller, within 90 days after receipt of the goods.[3]

Likewise, Professors White and Summers, authorities on the Uniform Commercial Code, used as an example the housesider who installs shoddy siding before moving on to a new town, as an explanation for the increase in state protective legislation restricting the holder in due course doctrine in consumer transactions. J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 14–8 (2d ed. 1980).

■ After a close examination of the Act, in conjunction with the definitional sections of Article 9 of the Uniform Commercial Code, as adopted in Missouri, and keeping in mind our duty to construe remedial statutes broadly, we find that a home improvement, such as the purchase of exterior siding by a consumer, falls within the contemplation of the Act.

The definitional section to the Act, § 408.400.1(2), defines "consumer goods or services" as "goods or services for use primarily for personal, family or household purposes." Furthermore, this section provides that the definitions in Articles 1, 3 and 9 of Missouri's Uniform Commercial Code are applicable to §§ 408.400 to 408.-415. § 408.400.2.

The term "goods" is defined in the Article 9 definitional section (and incorporated by reference in § 408.400.2) as "all things which are movable at the time the security interest attaches or which are *fixtures* (§ 400.9–313)...." (Emphasis added.) § 400.9–105(1)(f). Section 400.9–105(1)(f) refers to, and comment three states, that § 9–313 should be consulted for the treatment of fixtures.

Section 400.9–313(1) provides as follows:

The rules of this section do not apply to *goods* incorporated into a structure in the manner of lumber, bricks, tile, cement, glass, metal work and the like and no security interest in them exists under this article unless the structure remains personal property under applicable law. The law of this state other than this chapter determines whether and when

---

**2.** As noted previously, Roosevelt was designated the site for payment of the note and thus had some involvement in the original credit transaction before it became the holder of the note by negotiation. The policy that emphasizes the policing function of the financer is even more appropriate where there is a business relationship between the seller and financer. Unlike issuers of credit cards, who are excluded from the Act, assignees and holders of negotiable

instruments or contracts with waiver of defense clauses are assumed by the Act to be more closely related to the sales transaction. *Recent Developments,* supra, at 403.

**3.** The Missouri legislature does not record debates on any bill, nor does it publish committee reports. A legislative history of the Act, therefore, is lacking.

other goods become fixtures. This chapter does not prevent creation of an encumbrance upon fixtures or real estate pursuant to the law applicable to real estate. (Emphasis added.)

This section does not specifically define the term "fixtures" but rather describes within which "fixtures" a creditor will be allowed to take a secured interest. Structural materials are excluded from the rules allowing creditors to take secured interests in fixtures. This section, however, specifically states that structural materials are *goods*. They then become "fixtures," ("fixtures" are a subset of "goods" under the definition provided in § 400.9–105(1)(f)), by being incorporated into the structure.

We think the exclusion of structural materials from the rules on secured interests in fixtures is not relevant to consumer protection legislation such as the Act. The exclusion of structural materials from the rules allowing secured interests in fixtures prevents waste and protects the real estate claimant or mortgagee from material damage to the structure where the secured party chooses to proceed against the property upon default. *Patton v. Phoenix Brick Co.*, 167 Mo.App. 8, 12, 150 S.W. 1116, 1117 (1912). Subsection five to § 400.9–313 authorizes a party with a secured interest in fixtures to remove his collateral from the real estate subject to the duty to reimburse the mortgagee for any physical injury caused by the removal but not for diminution in the value of the structure due to the removal. Comment 5, § 400.9–313, V.A.M.S., 1965.

This policy interest does not exist under the Act. The real estate claimants' interests are protected in conjunction with those of the consumer by allowing the consumer to retain, against the holder of commercial paper, all defenses that he could assert against the seller of the home improvement. Thus, the exclusion of structural materials from the rules allowing secured interests in fixtures has no relevance to the Act. Exterior siding may be removed from a structure relatively easily (especially here where it has already buckled and slipped

down the walls), and the real estate claimant or mortgagee is protected under § 400.-9–313(5) which requires the secured party to reimburse the real estate claimant for any physical injury caused by the removal.

Section 400.9–313 leaves to Missouri law the determination of whether and when nonstructural goods become fixtures. § 400.9–313(1). The Missouri Supreme Court has defined a "fixture" as:

> [A]n article of personal property which has been so annexed to the real estate that it is regarded as a part of the land; its status may depend upon the facts and circumstances, but the principal elements for consideration are: (1) the annexation; (2) the 'adaption' of the article to the location; and (3) the intent of the annexor at the time of the annexation.

*Marsh v. Spradling*, 537 S.W.2d 402, 404 (Mo.1976).

The court there found cabinets, made on special order and installed into a home, to fall within this definition of "fixtures." Following this analysis we find exterior siding, specially cut for the dimensions of the Crider's home and installed on its exterior, to be a "fixture."

■ Our finding that exterior siding is a "fixture" results in it also coming under the definition of "goods" provided in § 400.9–105(1)(f), supra. Exterior siding is used for the household purpose of improving the decor of the home and avoids the need for regular painting. Thus, we find exterior siding is a consumer good for purposes of the Act.

Respondent cites *Tambur's, Inc. v. Hiltner*, 55 Ohio App.2d 90, 379 N.E.2d 231 (1977), as authority for its contention that exterior siding is not a consumer good. At issue in *Tambur's* was the interpretation of the Ohio Home Solicitation Sales Act which protects consumers against high pressure door-to-door salesmanship. That act allows the consumer three days to cancel a contract made pursuant to a personal solicitation for the sale of consumer goods or services at the residence of the buyer, provided the consumer make available to the

seller any goods delivered to the buyer in substantially as good a condition as when received. There the court reached its conclusion that exterior siding was not a consumer good for purposes of the Act in part because the siding, after it had been installed, could not be returned in substantially the same condition as when received. The Missouri Act has no such requirement.

We think the more enlightened approach is exemplified by those states that have been liberal in their construction of consumer transactions for purposes of their consumer protection statutes: *Eastern Roofing and Aluminum Co. v. Brock,* 70 N.C.App. 431, 320 S.E.2d 22, 24 (1984) (treating contract whereby seller was to install siding and windows on defendant's home as a contract for consumer goods or services for purposes of FTC rule concerning cooling-off period for door-to-door sales); *de la Fuente v. Home Savings Ass'n,* 669 S.W.2d 137, 141–142 (Tex.App. 1984) (holding assignee creditor of promissory note acquired for sale and installation of aluminum siding on consumer's home was not protected as holder in due course under FTC rule which eliminates holder in due course status as to commercial paper acquired in connection with any sale or lease of goods to consumers); *Jim Walter Homes, Inc. v. Mora,* 622 S.W.2d 878, 882 (Tex.App.1981) (holding purchase of new home to be built on purchaser's property was a contract for "goods or services" within meaning of Texas' Deceptive Trade Practices Act which protects against misrepresentation of the quality of goods or services). Moreover, in a rule which became effective in May of 1976, after the promissory note in question was executed, the Federal Trade Commission effectively abolished the holder in due course doctrine in consumer transactions by requiring a legend be placed on all consumer credit contracts for the sale or lease of goods or services to consumers, warning that any holder takes subject to the defenses which the buyer could assert against the seller of the goods. 16 C.F.R. § 433.2 (1986).

We find the defense of setoff as provided in § 408.405 of the Act is available to the Criders. Accordingly, we reverse and remand for the purposes of determining the amount of damages suffered by the Criders, said amount to be set off against the amount due Roosevelt on the note.

CROW, C.J., GREENE, P.J., and LOWENSTEIN, PUDLOWSKI, and WHIPPLE, Special Judges, concur.