[No. C036454. Third Dist. Aug. 9, 2001.]

JACK N. MARTIN et al., Plaintiffs and Appellants, v.
WELLS FARGO BANK, Defendant and Respondent.

## COUNSEL

Randall L. Wiens for Plaintiffs and Appellants.

Murphy, Pearson, Bradley & Feeney, Gregory A. Bastian, Mark E. Ellis; and Alan M. Steinberg for Defendant and Respondent.

## OPINION

**BLEASE, Acting P. J.**—Plaintiffs Jack N. Martin and Anita L. Martin (the Martins), appeal from a judgment of dismissal entered upon an order sustaining the demurrer of defendant Wells Fargo Bank (the bank) to their first amended complaint.

The bank issued business credit cards to the Law Offices of Jack Martin, one in the name of plaintiff Jack N. Martin, and one in the name of plaintiff Anita L. Martin, which they used for personal and household expenses. The bank exercised a right of setoff for amounts due on Anita's card by debiting the Martins' joint checking account.

The Martins, as credit card debtors and depositors, sued the bank to recover damages caused by a claimed improper exercise of the setoff. The validity of the action turns on the applicability of Financial Code section 864 to the Martins' debt.[1] The section limits a bank's right to setoff a matured debt "arising from an extension of credit to a natural person primarily for personal, family, or household purposes" (hereafter consumer goods). (§ 864, subd. (a)(2).)

The Martins claim an extension of credit occurs when a debt is created by the use of a credit card. The bank claims an extension of credit occurs when the bank issues a credit card and it is at that point that it must be determined whether the credit is primarily for personal, family or household purposes. We agree with the bank.

The application of section 864 is conditioned by the primary purpose for which credit is extended and that is determined when the credit card is

---

[1]A reference to a section is to the Financial Code unless otherwise specified.

issued rather than on each occasion when the card is used for a transaction or purchase. Since the primary purpose of a business credit card is commercial, the bank may setoff the debts incurred in its use without compliance with section 864. Conversely, the primary purpose of a personal credit card is for personal expenditures and the bank is subject to the setoff limitations of section 864.

We will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. *Facts Alleged in the First Amended Complaint*

The Martins, Jack N. Martin and Anita L. Martin, husband and wife, had joint checking and savings accounts at defendant bank in their personal capacity. "On or about November of 1990, [the bank] issued two 'Master-Card Business Cards' to the 'Law Offices of Jack Martin,' one in the name of plaintiff 'JACK N. MARTIN' and one in the name of plaintiff 'ANITA L. MARTIN.' The Law Offices of Jack Martin was not a corporation or a partnership, but was, . . . a sole proprietorship under which plaintiff JACK N. MARTIN was doing business."

Thereafter, the Martins from time to time incurred debt primarily for personal, family, or household purposes on their MasterCard business accounts arising from the bank's extension of credit to the Martins.

On or about September 11, 1998, the bank set off amounts due on Anita Martin's MasterCard business card by taking $848.47 from the Martins' joint checking account without the Martins' knowledge or permission and without complying with the mandatory requirements of section 864. The setoff resulted in an aggregate balance of less than $1,000 for all demand deposit accounts maintained by the Martins at defendant bank. The funds contained in the joint checking account included paid earnings and social security benefits, which are statutorily exempt from the right of setoff. As a result of the exercise of this right of setoff, the Martins were deprived of the use of the funds from their joint account, were forced to default on other obligations, had checks written on that account wrongfully dishonored, incurred charges and expenses as a result of the charges, lacked the ability to purchase the necessities of life, and were damaged in their personal and credit reputations.

---

[2]Because this case comes to us after a ruling on a demurrer, we assume the truth of all properly pleaded material allegations. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513].)

On September 14, 1998, the bank mailed the Martins a "Notice of Setoff" which stated that the bank had a right to set off the amount then owing on Anita Martin's MasterCard business card by taking $848.47 from the Martins' joint checking account.

On September 23, 1998, the bank again exercised its right of setoff to satisfy the debt due on the Martins' MasterCard business cards by taking $585.88 from the Martins' joint savings accounts without the Martins' knowledge or permission, without complying with the requirements of section 864, leaving an aggregate balance of less than $1,000 for all demand deposit accounts maintained by the Martins, and taking funds exempt from setoff.

On or about September 24, 1998, the bank mailed the Martins two "Notices of Setoff" which stated that the bank had a right to set off the amounts then owing on the Martins' MasterCard business cards by taking a total of $585.88 from the Martins' joint savings accounts.

As a result of the bank's exercise of its right of setoff, the Martins were deprived of the use and ownership of the funds taken from their joint savings account to pay their daily bills, they defaulted on their other obligations, lacked the ability to purchase the necessities of life, and were damaged in their personal and credit reputations.

B. *Procedural Background*

In their first amended complaint, the Martins alleged 10 causes of action for negligence, conversion, fraud, breach of the covenant of good faith and fair dealing, the intentional infliction of emotional distress, and unfair business practices, claiming that the bank improperly exercised its right of setoff under section 864, and seeking damages as well as equitable and injunctive relief. The Martins also sought certification to maintain a class action on behalf of all persons who have or had accounts with defendant bank in the State of California whose accounts have been similarly set off.

The bank demurred. The trial court granted the demurrer without leave to amend, finding that section 864 did not apply to debt arising from the extension of credit on a business credit card account, and entered final judgment.

Plaintiffs filed a timely notice of appeal from the final judgment.

DISCUSSION

At issue is whether section 864 applies to debts incurred when a business credit card is issued to a customer of the bank who elects to use it for personal expenditures.

■ A bank has an equitable right to set off a matured debt, owed the bank by a depositor, against funds in the customer's demand deposit account. (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 996, fn. 3 [275 Cal.Rptr. 201, 800 P.2d 557]; *Kruger v. Wells Fargo Bank* (1974) 11 Cal.3d 352, 357-358 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266] *(Kruger)*; *Chazen v. Centennial Bank* (1998) 61 Cal.App.4th 532, 541 [71 Cal.Rptr.2d 462]; *Gonsalves v. Bank of America* (1940) 16 Cal.2d 169, 173 [105 P.2d 118].) The right to a setoff arises from the contractual relationship between the bank and the depositor. (*Bank of Marin v. England* (1966) 385 U.S. 99, 101 [87 S.Ct. 274, 276, 17 L.Ed.2d 197, 200]; *Kruger, supra,* 11 Cal.3d at p. 357, fn. 3.) The bank is the owner of the funds and is the debtor of the depositor. (*Gonsalves v. Bank of America, supra,* 16 Cal.2d at p. 173.) "If the depositor is indebted to the bank and his [or her obligation] is due, there is a mutuality of obligation from which flows an equitable right of setoff . . . ." (*Chang v. Redding Bank of Commerce* (1994) 29 Cal.App.4th 673, 681 [35 Cal.Rptr.2d 64].)

Section 864 exempts from setoff an aggregate balance in a demand deposit account of $1,000 and funds obtained from specified sources (§ 864, subds. (b) & (c)(3); see fn. 6, *post*) when the debt "aris[es] from an extension of credit to a natural person primarily for personal, family, or household purposes . . . ." (§ 864, subd. (a)(2).)

■ The parties proffer different meanings of "extension of credit." The Martins claim an "extension of credit" occurs on each occasion on which the card is used. The bank claims an "extension of credit" occurs when the bank grants a right to incur debt by the issuance of the card.

The parties tender an ambiguity in the statutory language, i.e., at least *two* semantically plausible candidates of consequence to the case. (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1986) 177 Cal.App.3d 855, 859, fn. 1 [223 Cal.Rptr. 246] ["An ambiguity arises when language is reasonably susceptible of more than one application to material facts."].) An ambiguity may be resolved by a variety of means, beginning with the text and structure of the statute. (*In-Home Supportive Services v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720 [199 Cal.Rptr. 697].)

A debt is defined by section 864 as: (1) an interest-bearing obligation or an obligation payable in installments, (2) not reduced to judgment, (3) arising from an extension of credit, (4) to a natural person, (5) primarily for

personal, family, or household purposes (hereafter consumer purposes). (§ 864, subd. (a)(2).)[3]

This case concerns elements (3) and (5).[4] The Martins advance a transactional test, applicable to credit cards of whatever type, issued to a natural person. They claim an "extension of credit" occurs when the cardholder uses the credit card for personal, family or household purchases and that is determined from the nature of each purchase. The bank claims an "extension of credit" occurs when the bank grants a right to incur debt by the issuance of the credit card and the "primary" purpose of the extension of credit is determined by the type of credit card account. Following this definition, the bank claims the primary purpose of a business credit is commercial and not the purchase of consumer goods.[5] We agree with the bank.

Section 864 does not define "credit" or "extension of credit." While it is clear the credit must be extended for consumer purposes, "extension of credit" has a plausible application either to the right to incur debt, which occurs on the creation of a credit card account, or to the credit extended upon the use of the card for an individual or purchase.

Three provisions of section 864 support the bank's position.

First, the "debt," against which a setoff may be exercised, is defined as "*arising* from an extension of credit . . . ." (Italics added.) This suggests the "extension of credit" does not arise when the debt is incurred, but preexists the debt and constitutes an authorization to incur a debt.

Second, the use of "primarily" to define the purpose for the credit ("*primarily* for personal, family, or household purposes"), implies a general test, measured by the overall purpose of the credit card account rather than the purpose of each transaction. This avoids the complexity introduced if a primary purpose must be ascribed to each transaction. As the bank argues, a transactional test would place an impossible, or at least highly impractical, burden on the bank and other financial institutions because it would require

---

[3]Section 864, subdivision (a)(2) defines " '[d]ebt' " as "an interest-bearing obligation or an obligation which by its terms is payable in installments, which has not been reduced to judgment, arising from an extension of credit to a natural person primarily for personal, family, or household purposes, and does not mean a charge for bank services or a debit for uncollected funds or for an overdraft of an account imposed by a bank on a deposit account."

[4]The sufficiency of the allegations in connection to elements (1), (2), and (4) are not in dispute. In their first amended complaint, the Martins allege the debt is an interest-bearing obligation or obligation payable in installments, that has not been reduced to judgment, and the extension of credit was to a natural person.

[5]Conversely, the primary purpose of an individual credit card, measured at the time of issuance, is the purchase of consumer goods.

the bank to examine each expenditure reflected in account statements and independently determine whether the commercial credit was used for business or personal expenses. For example, the bank would have to determine whether a debt incurred at a restaurant was for business or pleasure.

Third, section 864 establishes a procedure by which to claim an exemption that is at odds with a purchase-by-purchase determination. It requires that the bank provide a notice of the setoff to the depositor, together with a form by which to claim the "debt has been paid or is not now owing, or that . . . funds in the deposit account" are exempt from the enforcement of a money judgment, such as benefits from Social Security, disability, workers' compensation and public assistance.[6] (§ 864, subd. (c)(3) & (5).) None of these exemptions has anything to do with the particular, transactional use of a credit card.

Further support is found in the legislative history of Assembly Bill No. 711, by which section 864 was enacted. (Stats. 1975, ch. 948, § 2 p. 2121.) Its purpose was to solve "the problem of the hostage bank account" which caused serious adverse credit and financial consequences to depositors. The problem arose from the bank's practice of draining a depositor's bank account, without notice to the depositor, to satisfy a matured debt. (Assem. Com. on Finance, Insurance, and Commerce, Analysis of Assem. Bill No. 711 (1975-1976 Reg. Sess.), as amended May 29, 1975, pp. 1-2.) The problem, however, did not extend to commercial credit; "[i]n the commercial field banks will continue to enjoy an equitable right of setoff." (*Id.* at p. 2.)

Related consumer protection statutes, applicable to credit cards, incorporate provisions of the federal Truth in Lending Act that aid in the construction of the phrase "extension of credit." The Song-Beverly Credit Card Act of 1971 (Song-Beverly Act), protects credit cardholders in a variety of ways[7] (Civ. Code, § 1747.10 et seq.), but does not employ the terms "credit" or

---

[6]The Martins alleged the funds in their account were exempt as Social Security and paid earnings under section 864 but the bank failed to send them the required form and for that reason they did not notify the bank of the claimed exemptions.

Apart from section 864, "the creditor's right to setoff . . . [is also] restricted by judicial limitations imposed to uphold a state policy of protecting the rights of the debtor." (*Kruger, supra,* 11 Cal.3d at p. 367 [unemployment and disability benefits].) However, the Martins make no claim they are entitled to an exemption under *Kruger.* For that reason we have no occasion to consider their rights under that decision.

[7]The Song-Beverly Act limits a cardholder's liability for unauthorized credit card use (Civ. Code, § 1747.10), requires correction of billing errors (Civ. Code, § 1747.60), provides remedies for untrue or unfavorable credit information given by a card issuer or refusal by the issuer to renew a credit card for specified reasons. (Civ. Code, §§ 1747.70, 1747.80.)

"extension of credit."[8] However, an express statement of legislative intent directs that its provisions conform to the federal Truth in Lending Act.[9] The Truth in Lending Act is similarly referenced by the Areias-Robbins Credit Card Full Disclosure Act of 1986. (Civ. Code, § 1748.10 et seq.) It specifies that compliance with Regulation Z, the federal regulation interpreting the Truth in Lending Act, will satisfy the requisite disclosure requirements. (Civ. Code, § 1748.11, subds. (a)(2) & (c).)[10]

The predicate for application of the Truth in Lending Act is the "extension of consumer credit . . . ." (15 U.S.C. § 1666(a).) In *American Express Co. v. Koerner* (1981) 452 U.S. 233, 243 [101 S.Ct. 2281, 2887, 68 L.Ed.2d 803, 807], the court examined possible interpretations of that phrase. At issue was whether a creditor must comply with the Truth in Lending Act, as amended by the Fair Credit Bill Act, to the correction of billing errors, when both a corporation and an individual officer are liable for a debt and the credit card company issued credit cards pursuant to an application for a "company account." (*Id.* at p. 234 [101 S.Ct. at pp. 2282-2283, 68 L.Ed.2d at p. 806].)

Considering the definitions of the terms "credit" and "consumer,"[11] the court concluded that an "extension of credit" may occur in either of two ways. A credit card company extends credit when it opens or renews an account because it grants a right "to incur debt and defer its payment." A credit card company also extends credit when the card is used to make purchases because the credit card company has allowed the cardholder " 'to defer payment of debt.' " (*American Express Co. v. Koerner, supra,* 452 U.S.

---

[8]The Song-Beverly Act defines a cardholder in part as "a natural person to whom a credit card is issued for consumer credit purposes, or a natural person who has agreed with the card issuer to pay consumer credit obligations arising from the issuance of a credit card to another natural person." (Civ. Code, § 1747.02, subd. (d).)

[9]"It is the intent of the Legislature that the provisions of this title as to which there are similar provisions in the federal Truth in Lending Act, as amended (15 U.S.C. § 1601 et seq.), essentially conform, and be interpreted by anyone construing the provisions of this title to so conform, to the Truth in Lending Act and any rule, regulation, or interpretation promulgated thereunder by the Board of Governors of the Federal Reserve System, and any interpretation issued by an official or employee of the Federal Reserve System duly authorized to issue such interpretation." (Civ. Code, § 1747.01.)

[10]"Regulation Z" is defined to mean "any rule, regulation, or interpretation promulgated by the Board of Governors of the Federal Reserve System . . . under the Federal Truth in Lending Act, as amended (15 U.S.C. § 1601, et seq.), and any interpretation or approval issued by an official or employee of the Federal Reserve System duly authorized by the board under the Truth in Lending Act, as amended, to issue such interpretations or approvals." (Civ. Code, §§ 1802.18, 1748.11, subd. (c); 12 C.F.R. § 226.1(a) (1995).)

[11]"Credit" is defined by the act as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." (15 U.S.C. § 1602(e).) "Consumer" is defined, with reference to a credit transaction, as a "natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." (15 U.S.C. § 1602(h).)

at p. 241 [101 S.Ct. at p. 2286, 68 L.Ed.2d at pp. 810-811].) The court recognized that if "extension of credit" means the creation or renewal of an account, the overall purpose of the account at the time of issuance must be considered but not at the time of a purchase or transaction.

The court said: "[i]t is clear that some consideration of the overall purposes of a credit card account, not merely of individual transactions, is necessary under . . . [section 1666]" because its application to some billing errors does not arise from a particular transaction and is possible only when the creation of the credit card account is classified as an extension of consumer credit. (*American Express Co. v. Koerner, supra,* 452 U.S. at p. 242, fn. 10 [101 S.Ct. at p. 2287, 68 L.Ed.2d at p. 811].) Such instances include charges for extensions of credit that were never made, failure to reflect payments that were made, and errors in computation. The court reasoned that these type of errors do not arise from the use of a credit card.

The court in *American Express* also took note of a statement issued by the Federal Reserve Board accompanying the April 7, 1981, revision of Regulation Z relating to "hybrid" credit cards used for more than one purpose, in which the Board stated: " '[W]hen a card is issued for business purposes, the fact that an individual uses it for consumer purchases does not subject the card issuer to the provisions on periodic statements, billing error resolution, and other consumer protections.' " (*American Express Co. v. Koerner, supra,* 452 U.S. at p. 242, fn. 10 [101 S.Ct. at p. 2287, 68 L.Ed.2d at pp. 811-812]; see also 45 Fed.Reg. 80648, 80651 (Dec. 5, 1980).)

Also instructive is *Cessna Finance Corp. v. Pivo* (1976) 58 Cal.App.3d 281 [129 Cal.Rptr. 888] (hereafter *Cessna*), which held that the protections of the Unruh Act (Civ. Code, § 1801 et seq.) governing consumer retail installment sales did not extend to a contract for the purchase of three small aircraft because the aircraft were not " ' "[g]oods" . . . for use primarily for personal, family or household purposes . . . .' " (*Cessna, supra,* at p. 285, fn. 1; see also Civ. Code, § 1802.1.) The aircraft were purchased on conditional sales contracts by three brothers, without a down payment, and leased to a flying club with the expectation the monthly payments would be satisfied from the lease revenue.

In determining whether the aircraft were goods for use primarily for personal or business purposes, the court concluded the parties' intent at the entry of the contract, rather than the actual use of the aircraft over the life of the contract, was controlling. (*Cessna, supra,* 58 Cal.App.3d at pp. 286-287.) It reasoned the Unruh Act was designed to protect consumers from abusive credit practices and not competent businessmen engaged in arm's-length transactions. The court found persuasive the reasoning of a Washington decision (*Commercial Credit Equipment Corporation v. Carter* (1973) 83

Wash.2d 136 [516 P.2d 767, 77 A.L.R.3d 1218], that " '[i]t is inconsistent with . . . [the] policy [to simplify, clarify and modernize the law governing commercial transactions] to require a creditor to monitor use of the collateral in order to ascertain its proper classification. *The uncertainty caused by the potentially shifting status of the goods is not desirable in the commercial world. . . .* [¶] . . . For our purposes, the manner in which a product is classified is determined at the time of agreement between the parties giving rise to the security interest, and, as to them, the categorization remains unaffected by a later transfer of the product in question." (*Cessna,* at pp. 287-288, italics added.)

We find this reasoning applicable to section 864, which provides protection to protect bank customers who incur consumer debt. When the bank issues a business credit card, it enters into a contract with the cardholder to extend credit in exchange for the cardholder's promise to pay any debt incurred. (*Hitz v. First Interstate Bank* (1995) 38 Cal.App.4th 274, 286 [44 Cal.Rptr.2d 890].) The bank presumably investigates and considers the applicant's creditworthiness and issues the card with a maximum credit limit based upon its findings. When the bank issues a business credit card, it does so on the basis of the business's credit rating. A cardholder may not have it both ways, apply for and receive a business credit card, but use it for personal purposes and expect to receive consumer protection. The difficulty and complexity of making a decision about the purpose of each transaction far exceeds anything the Legislature contemplated when it used the term "extension of credit." To avoid liability, the bank would have to comply with the limitations imposed by section 864. The end result would be that section 864, which was only intended to apply to consumer debt, would become the rule rather than the exception.

In an effort to escape this conclusion, at oral argument plaintiffs argued that the credit card issued to them was not really a business card, despite the fact the amended complaint alleged that they were issued MasterCard business cards.[12] This case comes to us on demurrer. In reviewing the sustaining of a demurrer without leave to amend, we accept as true all material facts pleaded in the complaint

---

[12]In support of this argument, plaintiffs obliquely raised the requirement of mutuality of obligation, claiming that if the card was in fact a business card, the bank could not exercise its right of setoff on a commercial debt against the funds in their personal account. They are incorrect. (*In re Bank of San Pedro* (1938) 11 Cal.2d 313 [79 P.2d 1057] [funds in personal savings account may be used to offset debt from loan in commercial department of bank].) Mutuality is tested not by the character in which the customer becomes indebted to the bank, but by the fact he is indebted to the bank in a balance that is due and owing " 'in the course of business.' " (*Melander v. Western Nat. Bank* (1913) 21 Cal.App. 462, 468-469 [132 P. 265].)

(*Continental Ins. Co. v. Lexington Ins. Co.* (1997) 55 Cal.App.4th 637, 646 [64 Cal.Rptr.2d 116]) and review for abuse of discretion. (*Blain v. Doctor's Co. (1990)* 222 Cal.App.3d 1048, 1053, fn. 1 [272 Cal.Rptr. 250]; *Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 486 [48 Cal.App.4th 471, 55 Cal.Rptr.2d 225].)[13] Plaintiffs make no argument on appeal that the trial court abused its discretion by denying them leave to amend their complaint to allege they were not issued a business card, nor did they make any offer of proof that would justify granting them leave to amend. Accordingly, we reject their claim.

### DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal. (Cal. Rules of Court, rule 26(a).)

Morrison, J., and Callahan, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 28, 2001. Baxter, J., and Chin, J., did not participate therein.

---

[13]"Where a complaint contains allegations destructive of a cause of action the defect cannot be cured by their omission without explanation in a subsequent pleading." (*Blain v. Doctor's Co., supra,* 222 Cal.App.3d at p. 1058; *Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 836 [69 Cal.Rptr. 321, 442 P.2d 377].) Plaintiffs' allegation that the credit card is a "MasterCard Business card," issued to the "Law Offices of Jack Martin" is fatal to their causes of action.