Christian **CAMPOS**, Plaintiff and Appellant,

v.

**WELLS FARGO BANK, N.A.,** Defendant and Appellee.

No. CIV. S–04–1892 WBS.

United States District Court, E.D. California.

Dec. 1, 2005.

Marc Andrews, Wells Fargo & Company, Diamond Bar, CA, Mark E. Ellis, Murphy, Pearson, Bradley & Feeney, Sacramento, CA, for Wells Fargo Bank, NA, Defendant.

H Lee Horner, Jr., Horner and Horner, Sacramento, CA, for Christian Campos, Plaintiff.

### MEMORANDUM AND ORDER RE: BANKRUPTCY APPEAL

SHUBB, District Judge.

Appellant Christian Campos (debtor), in his individual capacity, appeals, pursuant to 28 U.S.C. § 158(a), an order of the United States Bankruptcy Court denying his claim for relief from appellee Wells Fargo Bank's (the Bank's) seizure of funds from his savings account.

### I. Factual and Procedural Background

The following undisputed facts are largely taken from the October 7, 2003 trial transcript where they were read into the record. On September 22, 1994, the Bank obtained a judgment against debtor for $8,850.87. (Appellant's Excerpts of R. vol. 2, Rep.'s Tr. 13, Oct. 7, 2003.) This judgment arose out of a business Master-Card account jointly issued to debtor and his former spouse. (Id.) Debtor was never personally served with the judgment, as service was completed by publication. (Id.)

In 1998, debtor tried to open a new checking account with the Bank. (Id. at 15.) But before the Bank would accept his business, debtor was required to settle $300 worth of bad-check charges identified in his credit check report. (Id. at 7.) He eventually avoided these fees, however, because when he returned to pay this debt and open his account in 1999, the charges had disappeared. (Id.) The Bank never mentioned the unrelated outstanding judgment against him. (Id. at 15.)

When debtor successfully opened the 1999 account, he signed what his attorney described as "a garden variety check card" that included "a hundred pages of fine print ...." (Appellant's Excerpts of R. vol. 9, Rep.'s Tr. 7, Aug. 4, 2004.) The agreement included a paragraph covering "the Bank's right to set off" that contained the following language:

To secure your performance of this agreement, you grant the Bank a lien on

the security interest and the security in or affiliate of the Bank. In addition, you acknowledge that the Bank may set off against any accounts you own, including matured and unmatured time accounts for any obligations you owe the Bank at any time and for any reason allowed by law.... The Bank may consider this Agreement as your consent to the Bank's asserting its security interest or exercising its right of set off should any law require your consent.

(*Id.* at 12.) The agreement also provided that California law would control the relationship between the parties. (*Id.* at 13.)

At some point, the Bank connected debtor to the 1994 judgment and on August 27, 2002 "set off the entirety of the balances in the debtor's checking and savings accounts of $3,195.35,[1] leaving a zero balance." (Appellant's Excerpts of R. vol. 2, Rep.'s Tr. 15, Oct. 7, 2003.) However, on September 5, 2002, the Bank "returned $1,400 to the debtor so he could pay his mortgage ...." (*Id.*) Thus only $1,795.35 remains in dispute. (*Id.*)

On November 8, 2002, debtor commenced a Chapter 7 bankruptcy case. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 1.) Pursuant to 11 U.S.C. § 522, debtor next commenced these proceedings on November 15, 2002 to recover the remaining set off funds. (Br. of Appellee at 10); *see also* 11 U.S.C. § 522 (allowing the debtor in a bankruptcy case to assert, under some circumstances, the reclamation powers of the bankruptcy trustee). After two days of evidentiary hearings and three post-trial hearings, the bankruptcy court dismissed debtor's complaint without a written order. (Br. of Appellee at 10.) Debtor filed this appeal on September 10, 2004.

## II. *Discussion*

■ This court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Dewalt,* 961 F.2d 848, 850 (9th Cir.1992). As the material facts of this case appear largely undisputed, the court here need only review the bankruptcy court's legal determinations.

Debtor presents here, as he did in the bankruptcy court, several theories for recovery. He argues first that the agreement he signed when he opened the 1999 checking account did not pledge the exempt account funds as a surety for existing debts owed to the bank because he was unaware of any judgment against him. He then argues that the seized funds were protected by California law and whether taken as a set off or in execution of a judgment, the bank was required to provide notice and an opportunity to claim the funds as exempt. In addition, as a result of these allegedly overly aggressive tactics, debtor claims that the Bank secured a preferential payment in violation of 11 U.S.C. §§ 547 and 522. Finally, debtor argues that the set off is avoidable because the transfer of funds was fraudulent under 11 U.S.C. § 548 and Cal. Civ.Code §§ 3439–3439.12 (Uniform Fraudulent Transfer Act (UFTA)). The court will consider each of these theories in turn.

### A. *Contractual Right to Set Off*

■ Debtor disputes the Bank's claim that it had a contractual right to set off funds, exempt or otherwise, based on the terms of the agreement signed and applicable to the 1999 checking account. He argues that because neither party was

---

1. $3,195.35 was the total amount in debtor's checking and savings accounts. Separately, he had $1,238.60 in checking and $1,956.75 in savings. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 5.)

aware of the outstanding judgment at the time they entered into the agreement, the checking account funds were never pledged as collateral for the judgment debt. (Appellant's Opening Br. at 7.) In support of this argument, debtor relies on *Los Angeles Investment Co. v. Home Savings-Bank of Los Angeles*, 180 Cal. 601, 612–14, 182 P. 293 (1919) for the proposition that "[i]n California, a bank may not 'sneak something past' a new depositor." (Appellant's Opening Br. at 6.) *Los Angeles Investment,* is, however, factually distinguishable from the case at hand, as it involved a statement not signed by the plaintiff. 180 Cal. at 613, 182 P. 293. The California Supreme Court found no reason not to allow depositors to enter even unreasonable agreements with banks, as long as the depositor demonstrated affirmative consent to the agreement, "either by being required to sign it *or* by having his attention particularly called to it." *Id.* (emphasis added). The court put the burden on the signer to "know that he is accepting a contract [and] . . . realize the necessity of acquainting himself with its terms." *Id.* The debtor here thus properly consented to the terms of the agreement.

 Notwithstanding debtor's consent, a valid contract also requires bargained-for consideration, and debtor argues that the bankruptcy court found this lacking in this case. (Appellant's Reply Br. at 5.) Debtor's arguments take the findings of the bankruptcy court out of context. When analyzing the facts of this case under the fraudulent transfer statutes, the bankruptcy judge did observe that "to the extent that [the agreement between debtor and the Bank] refer[red] to past debts, there [was not] reasonably equivalent consideration, even though there [was] consideration." (*See* Appel-

lant's Excerpts of R. vol. 9, Rep.'s Tr. 23, Aug. 4, 2004.) However, as the bankruptcy judge's statement implies, the "reasonably equivalent" standard for consideration is specific to those statutes and is not the standard for evaluating the validity of a contract. Under the more general contract formation analysis, "[g]ross inadequacy of consideration may be relevant to issues of capacity, fraud and the like, but the requirement of consideration is not a safeguard against imprudent and improvident contracts except in cases where it appears that there is no bargain in fact." Restatement (Second) of Contracts § 79 cmt. C (1981).

 If the parties have bargained for an exchange, "there is no additional requirement of . . . equivalence in the values exchanged." *Id.* § 79(b). Furthermore, debtor cannot invalidate his contract with the bank simply because he was mistaken as to the value of the consideration he offered absent evidence that the Bank knew debtor was mistaken as to a "basic assumption on which he made the contract." *Id.* § 153. No record evidence supports this theory. The bankruptcy court therefore properly found that the check card agreement was supported by consideration, the adequacy of which is not at issue when examining the validity of the contract. The Bank's set off was consequently justified by the plain terms of a binding contract.

### B. *Notice Requirement for Set Offs and Judgment Executions*

 Even if the check card agreement was not a valid contract due to a lack of consideration, the Bank's appropriation of debtor's funds was still legal. The Bank only needed the check card agreement if the seized funds were indeed exempt[2] and

---

2. Under California law, certain types of property, specified in Cal.Code. Civ. Proc.

thus protected from the Bank's generic and historical set off rights. As the Bank correctly notes, a portion of the funds seized, those in the savings account, were not exempt and these are the only funds still at issue in this case.

Debtor argues only one theory of exemption: his wages, subject to continuing garnishment by the District Attorney to pay a child support debt, were exempt under Cal.Code. Civ. Proc. § 704.070(b)(1). But he fails to respond to the Bank's argument that, while the checking account funds may have consisted of debtor's salary deposits, by his own admission, the savings account did not. The Bank points to the following admission from debtor's testimony: "All of the funds they took from my accounts and applied on the judgment were from my wages *except* for what was in the savings account . . . ." (Br. of Appellee at 16 (quoting July 28, 2003 Campos Alternate Direct Test.)(emphasis added).) In response, debtor provides only his unsupported conclusion that "[t]he record clearly shows that most of the funds deposited . . . were totally exempt from levy as they were the debtor's net earnings after the District Attorney's garnishment." (Appellant's Reply Br. at 8 n. 2.) This statement fails to overcome the Bank's argument and the court therefore finds that the funds in the savings account were not exempt.

■ The Bank was thus free to exercise its equitable right to set off, separate from any contractual right it secured through the check card agreement. Contrary to debtor's arguments, which present § 864 of the California Financial Code as the sole and comprehensive source of a bank's set off rights, this power comes from common

law and is codified in Cal.Code Civ. Proc. § 431.70. *See Kruger v. Wells Fargo Bank,* 11 Cal.3d 352, 363, 113 Cal.Rptr. 449, 521 P.2d 441 (1974) (quoting *Jojola v. Wells Fargo Bank,* No. C71–900, 1973 WL 158166, at *3 (N.D.Cal.1973)). "If the depositor is indebted to the bank and his or her obligation is due, there is a mutuality of obligation from which flows an equitable right of setoff." *Martin v. Wells Fargo Bank,* 91 Cal.App.4th 489, 494, 110 Cal. Rptr.2d 653 (2001) (quoting *Chang v. Redding Bank of Commerce,* 29 Cal.App.4th 673, 681, 35 Cal.Rptr.2d 64 (1994)). "Th[is] right . . . allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Parker v. Cmty. First Bank,* 123 F.3d 1243, 1245 (9th Cir.1997) (quotations omitted).

Here, by virtue of debtor's checking account and the Bank's judgment against debtor, the parties were in mutual debtor-creditor relationships. *In re Bernard,* 96 F.3d 1279 (9th Cir.1996) (under California law, a depositor is a creditor of the bank and the bank is, in turn, the debtor). Notwithstanding any limitations imposed by statute, the Bank thus had a right to offset the debt owed by debtor under the 1994 judgment against the debt owed to the debtor based on his deposits.

Debtor presents two possible limitations on the Bank's power to set off. First, debtor argues that Cal. Fin.Code § 864, which provides notice procedures and exemptions for set offs imposed on individual consumers, describes the full extent of a Bank's set off power and the procedures that must be followed to exercise it. Because these provisions do not apply when

§ 704.010–.210, are exempt from judgment executions and cannot be levied upon. Likewise, Cal. Fin Code § 864(3) allows debtors covered by that provision to avoid set off

when the property qualifies as exempt under Chapter 4 of the Judgements Law, Cal.Code. Civ. Proc. §§ 703.010–706.

the debt to be set off has been reduced to a judgment, debtor argues that the Bank has no right to offset. Debtor misreads § 864 as a grant of a Bank's right to set off when it is actually a limitation on the power under given circumstances, none of which are present in this case.[3] *See Martin*, 91 Cal.App.4th at 496, 110 Cal.Rptr.2d 653 (explaining that, despite the passage of Cal. Fin.Code § 864, banks continue to enjoy an equitable right to set off with commercial clients). The Bank was thus not required to follow the notice provisions of § 864.

■ Second, debtor argues that because the Bank had secured a judgment, it was required to follow the notice procedures of the California Enforcement of Judgments Law, Cal.Code Civ. Proc. §§ 680.010–724.260. Even if the Judgments Law applied to this case, however, debtor would not have had a right to notice that was violated by the Bank's approach. The Judgments Law provides detailed procedures for levying on property in pursuit of a court ordered judgment. The law painstakingly describes how to serve a writ of execution when (1) a third party, (2) the judgment debtor, or (3) the levying officer has possession of the property on which levy is sought. *Id.* § 700.030–.050. Nowhere does the law contemplate how to serve a writ of execution in the event that the judgement creditor already has possession of the judgment debtor's funds, which leads the court to conclude that the formalities of the Judgments Law are unnecessary under such circumstances. Therefore, no applicable law provided procedures to constrain the Bank's seizure of debtor's funds in this case.

### C. *Preferential Payment*

■ Debtor's next theory is that, due to the timing of the Bank's set off and debtor's bankruptcy petition, the Bank realized an unlawful preferential payment in violation of 11 U.S.C. §§ 547 and 522. As an initial matter, the court notes that the preferential payment provisions of 11 U.S.C. § 553, covering set offs, rather than those of § 547, covering "transfers," applies in this case.[4] *Lee v. Schweiker*, 739 F.2d 870, 873 n. 4 (3d Cir.1984) ("[W]here a setoff right is being asserted, section 553, rather than section 547, governs the creditor's rights.") (citing *F.D.I.C. v. Bank of Am.*, 701 F.2d 831, 836 (9th Cir.1983)); *see also In re Rehab Project, Inc.*, 238 B.R. 363, 372 (Bankr.N.D.Ohio 1999) ("[I]t is abundantly clear that when § 553 is determined to be applicable, § 547 cannot thereafter be utilized to undo its effect."). Section 553(b)(1) allows the bankruptcy

---

**3.** The parties are in agreement that Cal. Fin. § 864 does not control here, although for different reasons. Debtor opines that because the Bank had already secured a judgment, the provisions did not apply. *See id.* § 864(a)(2). The Bank correctly notes that § 864 does not limit its set off rights when the debt arises from a relationship formed for commercial purposes. *See Martin*, 91 Cal.App.4th at 491, 110 Cal.Rptr.2d 653 (holding that § 864 does not apply when depositor's personal funds are seized to cover an unpaid MasterCard account opened for depositor's business).

**4.** Set off in the context of 11 U.S.C. § 553 is defined by the Ninth Circuit as an "adjustment[ ] of mutual debts arising out of separate transactions between the parties." *In re Harmon*, 188 B.R. 421, 425 (9th Cir. BAP 1995). "Mutual" means debts between the same parties, not necessarily based on the same contractual relationship. *See Doe v. United States*, 58 F.3d 494, 498 (9th Cir.1995) (holding that the IRS's claims against the bankruptcy estate could reduce any judgment against any government agency under the Federal Tort Claims Act). Therefore, even unrelated debts, like debtor's claim to his funds in the 1999 checking account and the Bank's judgment against debtor on a separate MasterCard account, can be offset against each other.

trustee[5] to recover a set off that takes place "within 90 days before the date of the filing of the petition" but only to the extent that the creditor improves his position by offsetting within, rather than prior to, the 90 day period.

▪ The Bank provides detailed calculations demonstrating that, by executing a set off on August 27, 2002, rather than August 10, 2002 (the 90th day prior to bankruptcy), it "temporarily" improved its position by $671.20 (debtor had more money on deposit on August 27 compared to August 10). (Br. of Appellee at 12.) As the Bank notes, however, when it returned $1,400 to debtor on September 5, 2002, it more than made up for any gains realized by setting off during the restricted 90 day period. Because neither party contended that the $1,400 was returned to discharge some other obligation, even when invited by the court to do so at oral argument, the court accepts the Bank's claim that any preference it may have received was netted out. The Bank's refusal to return the remaining $1,795.35 therefore does not offend 11 U.S.C. § 553 because the Bank's actions did not secure a preferential payment.

### D. Fraudulent Transfer

This leaves debtor's constructively fraudulent transfer claims under 11 U.S.C. § 548 and California Civil Code § 3439.05. Federal law permits a bankruptcy trustee to void transactions completed within a year[6] prior to the debtor's filing of a petition for bankruptcy if, voluntarily or involuntarily, the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation" and became insolvent as a result of the obligation. 11 U.S.C. § 548(a)(1)(B)(i), (a)(1)(B)(ii)(I). Section 522(h)(1) extends this right of the trustee to the debtor under certain circumstances specified in § 522(g)(1).[7]

Similarly, the UFTA, Cal. Civ.Code § 3439.05, defines a transfer as fraudulent when made "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." When evinced by a writing, as in this case, obligations are incurred at the time the writing is signed. Id. § 3439.06(e)(2).

The bankruptcy court determined "that the security interest [in the checking account funds] was supported by reasonably equivalent consideration to the extent that it picked up future debt," but not to the extent that it covered past debt. (See Appellant's Excerpts of R. vol. 9, Rep.'s Tr. 25, Aug. 4, 2004.) Debtor thus met the first requirement of both statutes—lack of reasonably equivalent consideration. However, the demands of the federal law were not met because the obligation[8] that

---

5. Although debtor is not the trustee in this case, 11 U.S.C. § 522(h) provides that the debtor may "recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section," and if the trustee does not herself attempt to avoid such transfer. Id. § 522(h)(1)-(2).

6. 11 U.S.C. § 548 was amended April 20, 2005 to extend the relevant transaction period from one to two years. Pub.L. No. 109–8, 119 Stat 23 (to be codified at 11 U.S.C. § 548(a)).

7. Significantly, under § 522(g)(1) the challenged transfer must have been involuntary, a requirement that the Bank argues has not been met in this case. However, the court need not search for a definition of voluntary, because even if debtor has a cause of action for fraudulent transfer, it is not one on which he can succeed.

8. Although both the Federal and California fraudulent transfer statutes address the timing of the "transfer or obligation," the court finds that a set off is more akin to an obligation

debtor sought to avoid was entered into over a year before he filed for bankruptcy. (*Id.* at 25.) Additionally, debtor's claims failed under the second part of both the federal law and UFTA because he was not insolvent when he entered into the second relationship with the Bank, nor was he made insolvent by that obligation at the time it was made. (*Id.* at 26.)

■■■ The court agrees with the bankruptcy court regarding debtor's failure to meet the timing and insolvency requirements and therefore need not address the question of "reasonably equivalent" consideration. As the Bank points out, the purpose of the fraudulent transfer laws is "to prevent the debtor from depleting the resources available to creditors through gratuitous transfers of the debtor's property" in the final moments before filing for bankruptcy. *In re N. Merch., Inc.*, 371 F.3d 1056, 1060 (9th Cir.2004). In furtherance of this goal, the relevant transfer period is tethered to the debtor's bankruptcy petition. This requirement grounds even the constructive fraudulent transfer theory and prevents debtors, like Campos, from avoiding their commitments by suggesting that they undertook certain obligations solely to defraud creditors years down the road. Debtor is thus not entitled to avoid the Bank's offset as a constructive fraudulent transfer. To hold otherwise would unjustifiably extend the scope of both statutes beyond the legislatures' intent.

IT IS THEREFORE ORDERED that the bankruptcy court's order dismissing debtor's complaint be, and the same hereby is, AFFIRMED.

---

than a transfer. Indeed, under the Federal Bankruptcy code, a set off "involves a mere netting-out of counterclaims or reconciliation of accounts and *not a transfer* of money or property ...." *In re Hancock*, 137 B.R. 835, 845 (Bankr.N.D.Okl.1992) (emphasis added); *see also In re Remillong*, 131 B.R. 727, 728 (Bankr.D.Mont.1991) ("[T]he definition of 'transfer' under 11 U.S.C. § 101(54) excludes setoff ...."). For this reason, the date on which debtor entered into a relationship with the Bank impacts the application of the fraudulent transfer statutes. In this case, the relevant date was thus the date on which debtor undertook an obligation that exposed his resources to set off by the Bank.