CUÉLLAR, J.,
Concurring. — Today the court strikes a careful balance between firefighters’ procedural protections and the realities that supervisors confront when managing public organizations. The foundation for the court’s opinion is its interpretation of the Firefighters Procedural Bill of Rights Act (Gov. Code, § 3250 et seq.), and the logic of that interpretation is unassailable. I nonetheless write separately to underscore an important principle *1391 about the interpretive responsibilities that are so often at the heart of what we do. The bottom line is this: however important it is to train our attention on the plain meaning of the statutory provision we are construing, we must read that provision as we do here — in its larger context — when deciding whether its meaning is plain.
Suppose a statute is enacted with provisions similar to the ones at issue in this case. “Any public employee,” the statute provides, “has a right to review personnel files that are used or have been used to determine the employee’s qualifications for employment, promotion, or discipline.” The question later arises whether a supervisor’s hastily scrawled note on a napkin about a subordinate’s performance — subsequently placed in a file folder, and then digitally copied onto a smartphone — constitutes a “personnel file,” and whether the supervisor’s occasional glance at the napkin or the digital file before writing a more formal evaluation constitutes “use[] to determine the employee’s qualifications for employment, promotion, or discipline.” That the ordinary usage and dictionary definitions of terms like “file,” “use,” and “determine” would matter in answering these questions is beyond question. (E.g., Ceja v. Rudolph & Sletten, Inc. (2013) 56 Cal.4th 1113, 1121 [158 Cal.Rptr.3d 21, 302 P.3d 211] [using ordinary usage and dictionary definitions to construe “good faith”].)
What would be difficult to defend, however, is the proposition that the inquiry should end without considering what the rest of the statute tells us about the meaning of the phrase at issue. Does a separate statutory provision imply that “personnel file” is to be construed broadly or narrowly? Are electronic records addressed elsewhere in the statute? If a phrase like “used to determine the employee’s qualifications” is not explicitly defined in the statute, do other provisions illuminate anything relevant about how the statutory scheme understands the limits of the procedural protections it affords?
The devil, in short, is in the details. And the details are elucidated by context — the statutory structure and the words of surrounding or related provisions. The statute’s structure and its surrounding provisions can reveal the semantic relationships that give more precise meaning to the specific text being interpreted, even if the text may have initially appeared to be unambiguous.[1] (Hodges v. Superior Court (1999) 21 Cal.4th 109, 114 [86 Cal.Rptr.2d 884, 980 P.2d 433] [interpreting the meaning of a provision “ ‘is
*1392 to discern the sense of the statute, and therefore its words, in the legal and broader culture’ ”].) And context also tells us more about the statute’s underlying purpose than we might glean from reading the text of a statutory provision in isolation. (Horwich v. Superior Court (1999) 21 Cal.4th 272, 276 [87 Cal.Rptr.2d 222, 980 P.2d 927] (Horwich) [explaining that understanding the Legislature’s intended purpose requires consideration of a statute’s structure and context].)
The majority’s framework for interpreting Government Code section 3255 appears very much in accord with these concerns. (See maj. opn., ante, at pp. 1384-1385.) That is, this court’s approach to interpreting statutes emphasizes the primacy of the Legislature’s intended purpose. (Goodman v. Lozano (2010) 47 Cal.4th 1327, 1332 [104 Cal.Rptr.3d 219, 223 P.3d 77] [“In interpreting a statute, our primary goal is to determine and give effect to the underlying purpose of the law.”].) Giving effect to that purpose requires us to start with a statute’s text and to train our focus on the language rather than extrinsic interpretive aids such as legislative history when there is not sufficient textual ambiguity to warrant the use of such material. (Maj. opn., ante, at p. 1384; Ennabe v. Manosa (2014) 58 Cal.4th 697, 713 [168 Cal.Rptr.3d 440, 319 P.3d 201]; Hsu v. Abbara (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) But, as the majority rightly acknowledges (maj. opn., ante, at p. 1385), the task of interpreting the relevant statutory text plainly includes consideration of the statute’s structure and the light it sheds on the Legislature’s intended purpose. (Martin v. Wells Fargo Bank (2001) 91 Cal.App.4th 489, 494 [110 Cal.Rptr.2d 653] [construing statute in light of its text and structure]; see Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] [“the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible”].)
*1393 Moreover, our ability to determine whether an apparently plain reading of a statute’s text produces an absurd result — a question we cannot avoid even if the relevant text of a statutory provision seems clear on its face — depends on some engagement with what we take to be the substantive goals the Legislature plausibly sought to advance. Thus, although we often say a statute’s “plain meaning governs” when there is no ambiguity (e.g., Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC (2015) 61 Cal.4th 830, 838 [189 Cal.Rptr.3d 824, 352 P.3d 391]), it would be problematic if our use of this formulation were interpreted to mean that an examination of a statute’s context is warranted only when there is ambiguity on a statute’s face — and I do not read the majority opinion to so suggest. To the contrary, it recognizes that, along with the text of the statutory provision directly at issue, structure and context can be critical in determining whether ambiguity exists and in discerning the Legislature’s intended purpose. (Maj. opn., ante, at p. 1385; Horwich, supra, 21 Cal.4th at p. 276; Manning, What Divides Textualists from Purposivists? (2006) 106 Colum. L.Rev. 70, 84 [observing that even textualists “recognize that the relevant context for a statutory text includes the mischiefs the authors were addressing” given that “speakers use language purposively”].)
There is a certain simplicity in the idea that our interpretive task ends if the meaning of a pivotal statutory phrase is “plain.” (E.g., People v. Cornett (2012) 53 Cal.4th 1261, 1265 [139 Cal.Rptr.3d 837, 274 P.3d 456].) And indeed, giving effect to a statute’s text and the intended purpose it implies is precisely what anchors the court’s role in a system of separated powers. (See Kopp v. Fair Pol. Practices Com. (1995) 11 Cal.4th 607, 672-673 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (cone. opn. of Mosk, J.).) But understanding whether that meaning is plain is not a project well served by reading statutory provisions as isolated fragments. (Id. at p. 673 (cone. opn. of Mosk, J.) [“To seek the meaning of a statute is not simply to look up dictionary definitions and then stitch together the results.”].) Instead our task is to consider the words of the text as part of a larger statutory project, so we can better discern not only how to resolve ambiguity but whether ambiguity exists in the first place. (People v. Johnson (2015) 61 Cal.4th 674, 682 [189 Cal.Rptr.3d 794, 352 P.3d 366] [explaining that we construe a provision’s words in the context of the statutory scheme to determine meaning and also whether the language is ambiguous].) Which is exactly what the court has done in this case.

 In Apple Inc. v. Superior Court (2013) 56 Cal.4th 128, 133 [151 Cal.Rptr.3d 841, 292 P.3d 883], for example, the court construed Civil Code section 1747.08, which provides, “no person, firm, partnership, association, or corporation that accepts credit cards” shall request or require the cardholder to provide personal identification information and cause it to be recorded. The plaintiff argued that the plain statutory language applied to online retailers *1392 selling electronically downloadable products. (Apple, at pp. 136-137.) The majority acknowledged the statute’s plain meaning was consistent with the plaintiff’s reading, but nonetheless rejected that construction based on the provision’s structure, context, and purpose. (Id. at pp. 137-139.) In California School Employees Assn. v. Governing Board (1994) 8 Cal.4th 333, 335-336 [33 Cal.Rptr.2d 109, 878 P.2d 1321], the court construed Education Code section 88203, which provides that classified community college employees are entitled to paid holidays including “every day appointed by the President... for a public fast, thanksgiving, or holiday.” The plaintiffs argued that a 1991 presidential proclamation designating “ ‘National Days of Thanksgiving’ ” to celebrate the end of the Persian Gulf War triggered paid holidays under the statute. (California School Employees Assn., at p. 336.) The court concluded that the plaintiffs’ interpretation was consistent with clear and unambiguous statutory language, but it nonetheless declined to adopt that construction given what the rest of the statute conveyed about the Legislature’s intended purpose. (Id. at pp. 340-342; see California Charter Schools Assn. v. Los Angeles Unified School Dist. (2015) 60 Cal.4th 1221, 1237-1238 [185 Cal.Rptr.3d 556, 345 P.3d 911] [declining to adopt plain meaning construction in light of the regulatory context]; Simpson Strong-Tie Co., Inc. v. Gore (2010) 49 Cal.4th 12, 26-27 [109 Cal.Rptr.3d 329, 230 P.3d 1117] [rejecting “plain language” construction because it was contrary to the Legislature’s intended purpose].)